

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2009

# Robinson v. Secretary Homeland

Precedential or Non-Precedential: Precedential

Docket No. 07-2977

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Robinson v. Secretary Homeland" (2009). *2009 Decisions.* Paper 1813.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1813

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-2977

———

OSSERRITTA ROBINSON

v.

JANET NAPOLITANO,* Secretary of the Department of
Homeland Security; MICHAEL AYTES,* Acting Deputy
Director, U.S. Citizenship and Immigration Services,
                                                Appellants

*Amended pursuant to F.R.A.P. 43(c)(2)

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cv-05702)
District Judge: Honorable Stanley R. Chesler

———

Argued September 9, 2008

Before: SLOVITER, FUENTES, and NYGAARD,
Circuit Judges.

Filed: February 2, 2009

———

Alison R. Drucker  (Argued)
United States Department of Justice
Office of Immigration Litigation
Washington, D.C.  20044

Alex Kriegsman
Office of United States Attorney

Newark, N.J. 07102

Attorneys for Appellants

Jeffrey A. Feinbloom (Argued)
Feinbloom Bertisch
New York, N.Y. 10007

Attorney for Appellee

_____

## OPINION OF THE COURT

_____

SLOVITER, Circuit Judge.

The issue before us is whether an alien married to a United States citizen remains an "immediate relative," within the meaning of the Immigration and Nationality Act ("INA"), if the couple had been married for less than two years when her citizen spouse died. It is an issue this court has never addressed.

## I.

### Factual and Procedural History

Osserritta Robinson ("Robinson"), a citizen and national of Jamaica, entered the United States on January 14, 2002, as an non-immigrant visitor on a B-2 visa and married Louis Robinson ("Mr. Robinson"), a United States citizen, in February 2003. In March 2003, Mr. Robinson filed a Petition for Alien Relative ("I-130 petition") for an immigrant visa on behalf of his wife as an "immediate relative." At the same time, Robinson filed an I-485 application to adjust her immigration status to that of a lawful permanent resident ("LPR").

Mr. Robinson died on October 15, 2003, in the Staten Island Ferry accident. On October 15, 2005, the U.S. Citizenship

and Immigration Services ("USCIS") informed Robinson that her I-130 petition had been automatically terminated upon the death of her husband. According to USCIS, Robinson was no longer an "immediate relative" within the meaning of the INA because her husband's death occurred before the couple had been married for two years.

Robinson filed a petition for a writ of mandamus and a complaint for declaratory and injunctive relief in the United States District Court for the District of New Jersey against Michael Chertoff, the Secretary of the Department of Homeland Security, and Emilio Gonzalez, Director, U.S. Citizenship and Immigration Services,[1] requesting that the court order USCIS to reopen her I-130 petition and I-485 application and treat her as an "immediate relative" of a United States citizen. The complaint also asked the court "to enjoin USCIS from using the death of Mr. Robinson as a discretionary factor in adjudicating Mrs. Robinson's I-485 application." Robinson v. Chertoff, No. 06-5702, 2007 WL 1412284, at *1 (D.N.J. May 14, 2007). The District Court denied the Government's motion to dismiss and granted summary judgment in favor of Robinson. Thereupon, the District Court set aside USCIS' determination that Robinson was not a spouse, ordered USCIS to process her I-130 petition and I-485 application, and granted a declaratory judgment that Robinson "is an immediate relative under 8 U.S.C. § 1151(b)(2)(A)(i) and for the purposes of adjudicating an I-130 petition." App. at 14.[2] The Government appeals.

## II.

### Jurisdiction and Standard of Review

---

[1] For purposes of convenience, we will refer to them jointly as "Government."

[2] The District Court also denied Robinson's "request for injunctive relief limiting the discretion of the USCIS in adjudicating her I-485 application . . . [because the] question has not been briefed and is not properly before the Court." Robinson, 2007 WL 1412284, at *5. Robinson did not appeal that order.

The District Court had jurisdiction under 28 U.S.C. § 1331 and Section 704 of the APA, 5 U.S.C. § 704, to review the meaning of the term "immediate relative" as it appears in 8 U.S.C. § 1151(b)(2)(A)(i). Because this is a "purely legal question and does not implicate agency discretion," the INA's jurisdictional bar, 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes judicial review of most discretionary immigration decisions, is not applicable in this case. Pinho v. Gonzales, 432 F.3d 193, 204 (3d Cir. 2005).

We have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review of the District Court's statutory interpretation, but afford deference to a reasonable interpretation adopted by the agency." Pinho, 432 F.3d at 204.

## III.

### Statutory Scheme

A United States citizen who seeks to gain lawful permanent resident status for an eligible family member must begin the process by filing an I-130 petition with USCIS on behalf of an alien who is an "immediate relative." 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1). Concurrently, or thereafter, the alien spouse[3] for whom the I-130 petition was filed (the "immediate relative") must file an I-485 application for adjustment of status. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a). "Immediate relatives" are defined in the INA as:

> [T]he children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the United States

---

[3] The statute is gender neutral. Because in this case, the citizen spouse was a male, we refer to the gender as applicable to the facts.

4

for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien . . . shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title [an I-360 petition] within 2 years after such date and only until the date the spouse remarries.

8 U.S.C. § 1151(b)(2)(A)(i) (emphasis added).[4]

USCIS "shall" approve the I-130 petition filed by the citizen spouse only if it determines, after an investigation, "that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative." 8 U.S.C. § 1154(b).

Approval of the I-130 petition renders the immediate relative eligible for adjustment of status under 8 U.S.C. § 1255(a), which provides, in pertinent part:

The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). Because immediate relative visas are not subject to numerical visa limitations, 8 U.S.C. §

---

[4] An I-360 petition allows a widow/er of a U.S. citizen to self-petition if, inter alia, she or he was married for at least two years and the petition is filed within two years of the citizen spouse's death. See 8 U.S.C. § 1154(a)(1)(A)(ii); 8 C.F.R. §§ 204.2(b), (i)(1)(iv).

1151(b)(2)(A)(i), once the I-130 petition is approved the "immigrant visa is immediately available" to the alien spouse at the time her I-485 application is filed, 8 U.S.C. § 1255(a). Thus, eligibility to adjust status to that of an LPR is contingent upon approval of the I-130 petition.

## IV.

### Discussion

Robinson argues that she remained an "immediate relative" within the meaning of 8 U.S.C. § 1151(b)(2)(A)(i) after the death of her husband. The Government counters that Robinson is no longer a "spouse" eligible to be considered an "immediate relative" because she had not been married to her citizen spouse for two years at the time of his death. The Government reads the second sentence of section 1151(b)(2)(A)(i) as qualifying the term "spouse" in the first sentence of the section. In other words, the Government argues that a spouse remains an "immediate relative" within the meaning of the INA after the death of his or her citizen spouse only if the couple had been married for two years at the time of the citizen's death.

Robinson argues in response that because the first sentence of the provision does not in any way qualify the term "spouse," she remains a spouse after her husband's death. She interprets the second sentence (which contains the two-year marriage requirement) as granting a separate right for widows to self-petition for visas rather than as a limitation on the definition of spouse.

More than thirty-five years ago the Bureau of Immigration Appeals ("BIA") considered the effect of a citizen spouse's death on a pending petition for an immigrant visa on behalf of the alien spouse. In In re Varela, 13 I. & N. Dec. 453, 453-54 (B.I.A. 1970), the BIA held that an alien spouse was no longer a "spouse" because her citizen spouse died prior to a determination of her I-130 petition. The Government argues that we should defer to the BIA precedent.

6

The District Court, without even citing In re Varela, agreed with Robinson's interpretation of the immediate relative provision, relying on the reasoning of the Court of Appeals for the Ninth Circuit in Freeman v. Gonzales, 444 F.3d 1031 (9th Cir. 2006). The Ninth Circuit refused to accord deference to Varela because it stated that the BIA's decision "lack[ed] . . . statutory analysis, . . . [and] is further undercut by the BIA's later finding [in In re Sano, 19 I. & N. Dec. 299 (B.I.A. 1985)] that it was 'extra-jurisdictional.'"[5] Freeman, 444 F.3d at 1038 (citation added).

Instead, the Ninth Circuit held that the first and second sentences of the statutory provision "stand[] independent" of each other and provide for "two different processes, such that one or the other applies – either the citizen spouse petitions or, if he dies without doing so, the alien widow may do so." Freeman, 444 F.3d at 1041 n.14, 1042. It reasoned that because the only limitation on the definition of "immediate relative" in the first sentence relates to alien parents (the grant of immediate relative status is limited to those whose citizen child is at least 21 years old) and "[t]here is no comparable qualifier to be a 'spouse,'" the term "immediate relative" means the spouse of a U.S. citizen, "without exception." Id. at 1039. Thus, according to that court, "Mrs. Freeman qualified as the spouse of a U.S. citizen when she and her husband petitioned for adjustment of status, and absent a clear statutory provision voiding her spousal status upon her husband's untimely death, she remains a surviving spouse." Id. at 1039-40 (emphasis in original).

The Freeman court rejected the Government's argument that the second sentence implicitly qualifies the general definition of spouse by imposing a two-year marriage

_____

[5] In Sano, the BIA held that it had no jurisdiction to address an appeal by the beneficiary from the denial of a visa petition; the BIA held that it had authority to hear appeals by only a visa petitioner (i.e., the citizen spouse who filed a visa petition on behalf of his alien spouse, but died before its approval). 19 I. & N. Dec. at 301.

7

requirement. Instead, it viewed the second sentence as applying "to those aliens whose citizen spouses did not initiate an adjustment of status proceeding before they died, granting such surviving spouses a beneficial right to file an immediate relative petition even without a living citizen spouse to vouch for the fact of the marriage." Id. at 1041.

Relying on Freeman, the District Court held that Robinson remained an immediate relative after the death of her spouse and noted that, "[t]he Court cannot imagine that Congress intended the time of death combined with the pace of adjudication, rather than the petitioner's conscious decision to promptly file an I-130 petition, to be the proper basis for determining whether the alien qualifies as an immediate relative." Robinson, 2007 WL 1412284, at *5.

Robinson argues that the death of her husband did not affect her status as an immediate relative which, she contends, "vested" at the time her husband filed the I-130 petition. The Government contends that "immediate relative status" is not determined at the time the I-130 petition was filed but at the time the petition is adjudicated. It supports that argument by noting that the present tense is used in 8 U.S.C. § 1154(b), the statutory provision governing the grant of immigrant visas. This provision states that the Attorney General (now the Secretary of Homeland Security)[6] "shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) . . . , approve the petition." 8 U.S.C. § 1154(b) (emphasis added).

The District Court believed that the fact that "the statute is written in the present tense is not particularly significant," Robinson, 2007 WL 1412284, at *4, but we disagree. The use of

---

[6] The Homeland Security Act of 2002 transferred the authority to grant visas from the Attorney General to the Secretary of the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, § 402(4), 116 Stat. 2135, 2178 (codified at 6 U.S.C. § 202(4)).

the present tense in 8 U.S.C. § 1154(b) belies Robinson's contention that an alien's marital status at the time of filing the I-130 petition controls, and makes plain that the facts in the petition - including the alien's spousal status - must be true at the time USCIS decides the petition.

The present tense is also used in the section governing adjustment of status, which provides that the Attorney General may adjust the status of an alien if:

> (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added).

Robinson relies on the last clause of the subsection ("at the time his application is filed") to argue that eligibility for immediate relative status at the time of filing the application is controlling. Robinson's statutory construction of the provision is not persuasive. Instead, the natural reading of this provision is that the final clause applies to only the third requirement. See United States v. Hodge, 321 F.3d 429, 436 (3d Cir. 2003) ("The doctrine of the last antecedent teaches that 'qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding' and not to 'others more remote.'") (quoting Resolution Trust Corp. v. Nernberg, 3 F.3d 62, 65 (3d Cir. 1993)). If the phrase, "at the time his application is filed" applied to more than the third requirement, its natural placement would be before the second as well as the third requirement.

In addition to her attempt to find support in the statutory language, Robinson also argues that under the regulations governing the processing of petitions her eligibility for a visa is to be determined at the time of filing. She notes, for example, that 8 C.F.R. § 204.1(a)(1) provides that the citizen spouse must "file" Form I-130 for a qualifying relative and 8 C.F.R. § 103.2(b)(12) provides that evidence in response to a request must

9

establish eligibility at "time of filing." However, these regulations merely set up the procedures by which a citizen petitions for a relative. 8 C.F.R. §§ 204.1(a)(1), 204.2(a)(1). They do not suggest that the agency must grant the application of a surviving spouse by considering only the marital status at the time the petition was filed. Likewise, the regulation to which Robinson points that provides that the agency must deny the petition if it receives additional evidence that shows that the surviving spouse was not eligible at the time of filing, 8 C.F.R. § 103.2(b)(12), merely shows that eligibility at the time of filing is a necessary condition for the grant of a petition; it does not establish that eligibility at that time is sufficient if the citizen spouse dies before the adjudication. As such, the regulations do not support Robinson's argument.

Accordingly, we hold that eligibility for an immediate relative visa depends upon the alien's status at the time USCIS adjudicates the I-130 petition, not when that petition was filed. This becomes dispositive in the situation when a citizen spouse dies before the citizen spouse and the alien were married for two years.

The underlying issue of statutory construction is not complicated. To repeat, section 1151(b)(2)(A)(i) provides:

> [T]he term "immediate relatives" means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien . . . shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries.

8 U.S.C. § 1151(b)(2)(A)(i).

10

The first sentence of the immediate relative definition cannot be divorced from the second sentence. The first sentence provides a general definition of immediate relatives based on familial relationships to a U.S. citizen. In the same sentence, the definition of parent is qualified by adding that a parent is deemed an immediate relative only if his or her child is at least twenty-one years old. The second sentence qualifies the definition of spouse by including as an immediate relative the widow or widower of a citizen spouse who died as long as s/he had been the spouse of the United States citizen for at least two years at the time of the citizen spouse's death. For those surviving spouses who had been married for two years but for whom no petition for immediate relative status had yet been filed, the section also provides an opportunity to remedy that gap by authorizing the surviving spouse to self-petition within two years of the death of the citizen spouse.

The language and this interpretation is straightforward. Significantly, the two-year marriage requirement applies to both groups of surviving spouses, those for whom the citizen spouse had filed the petition before his death and those for whom the citizen spouse had not filed the petition.

The immediate relative provision contains one exception to the rule that the death of the citizen spouse terminates immediate relative status if the death occurs before the petition is granted, i.e., the exception covering the situation of a couple who had been married for two years at the time of the citizen-spouse's death.[7] As we stated in United States v. McQuilkin, 78 F.3d 105

---

[7] The only other exceptions to the rule that immediate relative status terminates upon the death of the citizen spouse are in the cases of abused spouses or children of U.S. citizens and widows of members of the U.S. armed forces killed in combat. A self-petition by an abused spouse or child "shall not [be] adversely affect[ed]" by the death of the citizen-abuser after the filing of a self-petition. 8 U.S.C. § 1154(a)(1)(A)(vi). Similarly, a widow of a member of the U.S. armed forces killed in combat "shall be considered . . . to remain an immediate relative after the date of the

11

(3d Cir. 1996), "It is a canon of statutory construction that the inclusion of certain provisions implies the exclusions of others. The doctrine of inclusio unius est exclusio alterius 'informs a court to exclude from operation those items not included in a list of elements that are given effect expressly by the statutory language.'" Id. at 108 (quoting In re TMI, 67 F.3d 1119, 1123 (3d Cir. 1995)). As a result, we conclude that a spouse ceases to be an immediate relative when the citizen spouse dies unless the couple had been married at least two years at the time of death. In effect, the second sentence qualifies which spouses of deceased citizens are immediate relatives, just as the last clause of the first sentence qualifies which parents of citizens are immediate relatives.

Our reading of the immediate relative provision comports with the ordinary meaning of the term "spouse." "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute." Perrin v. United States, 444 U.S. 37, 42 (1979). The INA does not provide a helpful definition of the term "spouse" in its definitional section. 8 U.S.C. § 1101. Instead, it negatively defines spouse by stating who is not a spouse: "The term [sic] 'spouse', 'wife', or 'husband' do not include a spouse, wife, or husband by reason of any marriage ceremony where the contracting parties thereto are not physically present in the presence of each other, unless the marriage shall have been consummated." 8 U.S.C. § 1101(a)(35). This cannot be considered a "definition" in any meaningful way because it repeats the terms it seeks to define and, as Robinson herself notes, "does not preclude common understandings of the term." Appellee's Br. at 7.

---

citizen's death" if she self-petitions within two years and does not remarry. National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, § 1703, 117 Stat. 1392, 1693 (2003). There is no two-year marriage requirement in these situations.

Significantly, the INA's definitional section does provide statute-specific definitions of other commonly-used terms such as "child," which it defines to mean "an unmarried person under twenty-one years of age" who satisfies other specific requirements. 8 U.S.C. §§ 1101(b)(1), 1101(c)(1). In addition, the INA includes a definition of "parent" that expressly includes a "deceased parent." 8 U.S.C. § 1101(c)(2). Congress' choice to include specific definitions of these common family words - child and parent - but not to include such a definition of spouse strongly suggests that the ordinary meaning of spouse at the time of the enactment of the immediate relative provision should control. See Perrin, 444 U.S. at 42.

The original immediate relative provision of the INA was enacted in 1965 and stated in pertinent part: "'[I]mmediate relatives' . . . shall mean the children, spouses and parents of a citizen of the United States: *Provided*, That in the case of parents, such citizen must be at least twenty-one years of age." Act to Amend the Immigration and Nationality Act, Pub. L. No. 89-236, § 1, 92 Stat. 911, 911 (1965) (codified as amended at 8 U.S.C. § 1151(b)(2)(A)(i)) (emphasis in original). The common, ordinary meaning of spouse in 1965, according to Black's Law Dictionary covering that period, was "[o]ne's wife or husband." Black's Law Dictionary 1574 (4th ed. 1951).[8] That entry also cites a 1939 Oregon Supreme Court decision in which the Court separately defined "surviving spouse" to mean "the one, of a married pair, who outlives the other." Rosell v. State Indus. Acc. Comm'n, 95 P.2d 726, 729 (Or. 1939).

In 1990, Congress amended the INA to add the second sentence of the immediate relative provision, which, for the first time, extends the term to cover the situation of the death of the citizen spouse and includes the two-year marriage requirement.

---

[8] After the 1951 edition, no new or revised edition of Black's was issued until the revised 4th edition was published in 1968. Black's Law Dictionary, (4th ed. rev. 1968). The 1968 edition's definition of spouse is identical to the 1951 version quoted above. Id.

13

Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 4981 (1990). By that time, Black's Law Dictionary had added the following to its definition of spouse: "'surviving spouse' is one of a married pair who outlive the other." Black's Law Dictionary 1402 (6th ed. 1990). We reject Robinson's argument that the inclusion of "surviving spouse" in the 1990 Black's Law Dictionary entry for "spouse" proves that she remains legally a spouse even though her husband is deceased. The fact that Black's Law Dictionary's entry for spouse defines "surviving spouse" separately disproves Robinson's hypothesis.

Moreover, to conclude that "spouse" and "surviving spouse" have the identical meaning is illogical and is contrary to our understanding of the legal effect of death on a marriage. The standard legal effect of death on marriage is that it terminates the legal union. See 52 Am. Jur. 2d Marriage § 8 (2000) ("[M]arriage . . . is terminable only by death or presumption of death, or by a judicial decree of divorce, dissolution, or annulment."). The domestic relations law of New Jersey (the state in which Robinson and her husband resided at the time of his death and the state in which this action was brought) also suggests that a marriage terminates upon the death of one spouse. See N.J. Stat. Ann. § 9:17-43(a)(1) (West 2002) (former husband is presumed to be father of child born within "300 days after the marriage is terminated by death, annulment or divorce"); N.J. Stat. Ann. 2C:24-1a(1) (West 2005) (belief that spouse is dead is defense to bigamy).

The very language of the immediate relative provision distinguishes between a living spouse and a surviving spouse when it states that "an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death . . . shall be considered . . . to remain an immediate relative." 8 U.S.C. § 1151(b)(2)(A)(i) (emphasis added). Because Robinson's citizen spouse died before the couple was married for two years, Robinson does not qualify as an "immediate relative" under the INA.

Our dissenting colleague argues that Robinson will be removed because her petition "is stuck in the government's

14

bureaucracy." Dissent typescript op. at 16. That misstates the facts and the law. We agree with the agency that Robinson's claim must be rejected, not because of any government bureaucracy but because she does not meet one of the Congress' requirements for immediate relative status, i.e., that she had been married to her citizen spouse for at least two years. Congress has imposed a requirement of a particular length of a petitioner/claimant's prior marriage in a variety of situations. For example, one of the ways in which a surviving spouse can qualify for veterans' benefits is by showing that the surviving spouse was married to the veteran for one year or more. See 38 U.S.C. § 1304 (2); see also 10 U.S.C. § 1447(7)(A) (Armed Forces Act); 42 U.S.C. §§ 416(b), (c) (Social Security Act).

We are aware that the result of our holding is that Robinson is ineligible for LPR status as a result of a tragic accident that neither she nor her citizen spouse could have avoided or anticipated. But our obligation is to interpret the statute according to its language. Our holding is consistent with the core purpose of the U.S. family-based immigration policy: the promotion of family unification for U.S. citizens and lawful permanent residents. See Act to Amend the Immigration and Nationality Act, Pub. L. 89-236, § 1, 79 Stat. at 911 (codified as amended at 8 U.S.C. § 1151(b)(2)(A)(i)); H.R. Rep. No. 89-745, at 1, 12 (1965) ("Reunification of families is emphasized as the foremost consideration [of the legislation].")

Admittedly, inclusion of a surviving spouse as an immediate relative if s/he was married for two years also does not promote unification of the marital unit but Congress undoubtedly recognized that other considerations become relevant once the alien spouse builds increased ties with the United States. A marriage that lasted two years can be presumed to have been bona fide, and in that period the surviving spouse would have developed settled expectations.[9] Congress could

_____

[9]A regulation promulgated after the USCIS's decision in this case provides that, if the two-year marriage requirement is satisfied when the spouse dies, the I-130 immediate relative petition is

15

reasonably determine that an alien with a pending I-130 petition who had been married to a U.S. citizen for less than two years at the time of the citizen spouse's death is not entitled to LPR status. Congress created a balance between the goal of family unity and the legitimate expectations of an alien-spouse whose connections to the United States were likely to have become solidified during the two-year marriage period.

## V.

## Conclusion

For the reasons set forth, we will reverse the order of the District Court and direct it to grant the Government's motion to dismiss.

NYGAARD, <u>Circuit Judge</u>, *dissenting*

As a result of the government's fatally flawed interpretation of §1151(b), Osseritta Robinson will be removed from the United States, in spite of her full compliance with the INA, simply because the petition filed on her behalf by her deceased husband is stuck in the government's bureaucracy. The government argues, and the majority agrees, that both the plain language of the statute and deference to their implementation of this provision dictate this result. I disagree for three reasons. First, I believe the plain language leads to a contrary result. Second, even were this definition ambiguous, I would not defer to the government's interpretation. Third, I do not think that *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837 (1984) even applies. I will discuss these reasons in inverse order.

---

automatically converted into a I-360 widow/er petition. 8 C.F.R. § 204.2(i)(1)(iv), <u>as amended</u>, 71 Fed. Reg. 35,732, at 35,749 (2006).

16

In *Chevron* the Court ruled that when Congress explicitly or implicitly delegates authority to an executive agency to develop regulations and practices to fill the interstices in the law, the courts must defer to them. The Court held that "[t]he power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." (Quoting *Morton v. Ruiz,* 415 U.S. 199 (1974)). In *Chevron* Congress had failed to define a term. The EPA promulgated detailed regulations and national standards defining the term at issue. The Court held that because the regulatory scheme was "technical and complex," the agency "considered the matter in a detailed and reasoned fashion," and the decision involve[d] reconciling conflicting policies," courts must defer to the technical expertise of the agency. *Chevron*, 467 U.S. at 865.

Here Congress provided us with a definition of "immediate relative" and had no reason to delegate, explicitly or implicitly, any further authority to the executive department to further tweak the definition. The words and phrases at issue are not technical. The agency has no relevant expertise to more fully define them for us. There is no legislative history to suggest there existed any controversy which Congress referred to the agency to resolve. The only reasonable inference to draw is that Congress did not intend to delegate any authority to the agency on this issue at all. As a result it is for the court to use our standard, time-honored means of statutory construction. The mere fact that the panel is divided on how to read the definition at issue is no reason to call upon *Chevron* to bail us out.

Even were this a *Chevron* matter, I would not defer to the government's interpretation. The government stated that, historically, it has interpreted §1151(b)(2)(A)(i) and the term "spouse" to exclude aliens like Robinson from the grant of an immediate relative classification. To me, the government's argument is an attempt to use *Chevron* to defend an errant interpretation of the statute primarily because the same error has been made for a number of years. Moreover, even the government's claim of consistency does not withstand scrutiny. I

17

would consider it an abdication of my judicial obligation to construe and apply the statute, and a denial of Robinson's right-of-access to the courts, to defer to departmental interpretations that are as unfounded as this.

The government, and the majority, refer to *Matter of Varela* 13 I. & N. Dec. 453 (BIA 1970), as primary evidence of its persistent approach to this statute. Yet, I am persuaded by the analysis of the Court of Appeals of the Ninth Circuit that *Varela* was invalidated because it was deemed extra-jurisdictional. *Freeman v. Robinson*, 444 F.3d 1031 (9th Cir. 2005). I simply do not regard *Varela* as carrying any weight.

Moreover, the government's reference to a 1938 INS amendment to a regulation is not on point. This amendment states that the issuance of a visa will be withheld and approval of a petition may be revoked "if it is ascertained that the petitioner . . . has died." 3 Fed. Reg. 263 (1938). The amendment refers to the government's general authority to revoke an approved I-130 petition or withhold the grant of a visa. Neither of these actions deal with the topic at hand, which is whether the government has authority to terminate a properly filed I-130 petition that is still pending, based only upon the death of the petitioner. Additionally, the regulation refers generically to petitioners rather than "spouse." The government's use of the 1938 amendment as evidence of a consistent interpretation of §1151(b)(b)(2)(A)(i) is specious.

With regard to the plain meaning of the statute, I disagree with the majority's definition of "spouse." The government argues and the majority contends that the terms "surviving spouse" or "former spouse" are distinct from the common understanding of the word "spouse." The majority attempts to bolster its position by, among other things, emphasizing Congress' use of the phrase "was the spouse" in §1151(b)(2)(A)(i). Yet, we need look no further than the language used later in the same sentence to appreciate the inconsistency that this restrictive definition creates.

18

> In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if <u>the spouse</u> files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date <u>the spouse</u> remarries. (Emphasis added).

8 U.S.C. §1151(b)(2)(A)(i).  Similarly, in discussing which foreign nationals may self-petition after the death of a husband or wife who was a citizen or legal permanent resident of the United States, the statute states:

> For purposes of subclause (I), an alien described in this subclause is an alien . . . (CC) who was a bona fide spouse of a United States citizen within the past 2 years and - - (aaa) whose <u>spouse</u> died within the past 2 years.

8 U.S.C.A. § 1154(a)(1)(A)(i)(II).  In both sections of this statute, the word "spouse" is used without any qualifying terms such as "former" or "surviving."

It is obvious to me that Congress used "spouse" to refer to a continuing marital bond between the deceased petitioner and a surviving husband or wife.  Therefore, the majority's interpretation fails to meet one of the principal rules of statutory construction, which is to give terms consistent meaning.  In light of this, I cannot accept the government's narrow definition of "spouse." As the statute plainly reads, "spouse" is an inclusive term that includes aliens such as Robinson who survive the death of their petitioning husband or wife.

19

I am also unpersuaded by the majority's reliance upon the present tense verbs that appear in 8 U.S.C. §1154(b), a provision that focuses upon the government's "[i]nvestigation; consultation; approval; [and] authorization to grant <u>preference status</u>." (Emphasis added.) Although the majority masterfully reviews the immediate relative petitioning process, its opinion exposes a fundamental confusion between an I-130 petition, which is filed to request an alien's classification as an immediate relative, and an I-485 petition, which is filed to request the grant of an alien's change of status. By extracting a sentence from §1154(b), the majority opinion succeeds only in raising the question of whether the petitioning spouse must be alive during the investigation of the I-485 petition for change of status, a question that is not at issue here. I view the discussion of §1154(b) as irrelevant. This appeal focuses only upon Robinson's classification as an immediate relative, not her change of status.

Regarding the majority's structural interpretation of 8 U.S.C. 1151(b)(2)(A)(i), I do not agree that the second sentence clearly modifies the first sentence. To the contrary, I submit that the only reasonable way to understand these two sentences is if they are read as independent. The District Court correctly found that the first sentence lists spouse, without any qualifying terms, as one type of relationship that enables an alien to be given an immediate relative classification. The second sentence refers to scenarios in which the petitioning spouse has died, but it concludes by saying that an alien in this circumstance can be classified as an immediate relative "but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries." The statute does not mandate the termination of I-130 petitions upon the death of a petitioner, and even the regulations make it clear that a pending or approved I-130 eliminates the need for the filing of a self-petition.[10] Therefore,

---

[10]"A currently valid visa petition previously approved to classify the beneficiary as an immediate relative as the spouse of a United States citizen must be regarded, upon the death of the

the only person to whom this second sentence in §1151(b)(2)(A)(i) can refer is an alien who is not the beneficiary of a pending or approved I-130 at the time of the death of the petitioner.

To me, applying this two-year marital requirement to even those who have already filed an I-130 implicitly presumes to be invalid the marriage of those who are wed less than two years before the petitioning spouse dies.  This is inconsistent with the statute.  As a result, after reviewing both the language and the structure of section 1151(b)(2)(A)(i) it is clear to me that the two sentences are to be read as describing two distinct tracks for an alien spouse to obtain an immediate relative classification: petition by a living spouse, or self-petitioning.

I also oppose granting  the government an expanded scope of authority under 8 U.S.C. §1155.[11]  The government argued that since §1155 already gives it power to revoke the acceptance of an I-130 petition upon the death of the petitioner, it implicitly already has the power to terminate pending I-130 petitions upon the death of the petitioner.  In my view, this interpretation of §1155 is seriously flawed.

---

petitioner, as having been approved as a Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant for classification under paragraph (b) of this section, if, on the date of the petitioner's death, the beneficiary satisfies the requirements of paragraph (b)(1) of this section. If the petitioner dies before the petition is approved, but, on the date of the petitioner's death, the beneficiary satisfies the requirements of paragraph (b)(1) of this section, then the petition shall be adjudicated as if it had been filed as a Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant under paragraph (b) of this section." 8 C.F.R. 204.2(i)(1)(iv).

[11]"The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition."  8 U.S.C.A. § 1155.

As the government would certainly concede, the plain language of §1155 does not provide governmental authority to terminate pending I-130 petitions. Its authority is limited to revoking approved petitions. Moreover, upon examining the regulations that implement §1155, it is clear to me that the government's interpretation of §1155 and §1151(b)(2)(A)(i) results in an arbitrary outcome that defies both reason and equity. The statutory interpretation argued by the government and approved by the majority will not only summarily terminate Robinson's properly filed I-130 petition, it will also create a regulatory crevice into which Robinson will be dropped.

Under the regulations, the government has discretion to both withhold automatic revocation of an approved I-130 petition, and to refrain from denying a visa in cases where humanitarian concerns justify such relief. 8 C.F.R. 205.1(a)(3)(i)(c)(2).[12] The problem created in the majority's interpretation of §1151(b) and §1155 is that it denies Robinson's opportunity for discretionary relief, even though she would have qualified for it but for the delays of the government in approving Robinson's I-130. The practical effect of the majority's opinion is not only that Robinson's I-130 will be terminated because of the government's dilatory action – or inaction – on her husband's petition, but also that she will be removed from the country,

---

[12]"The approval of a petition or self-petition made under section 204 of the Act and in accordance with part 204 of this chapter is revoked as of the date of approval: . . .Upon the death of the petitioner, unless: . . . .U.S. Citizenship and Immigration Services (USCIS) determines, as a matter of discretion exercised for humanitarian reasons in light of the facts of a particular appeal, that it is inappropriate to revoke the approval of the petition. USCIS may make this determination only if the principal beneficiary of the visa petition asks for reinstatement of the approval of the petition and establishes that a person related to the principal beneficiary in one of the ways described in section 213A(f)(5)(B) of the Act is willing and able to file an affidavit of support under 8 CFR part 213a as a substitute sponsor." 8 C.F.R. 205.1(a)(3)(i)(c)(2).

since no other relief is available to her under the INA.[13]   The District Court was correct in stating that "the fortuity of the citizen spouse's untimely death is too arbitrary and random a circumstance to serve as a basis for denying the petition." *Robinson v. Chertoff,* 2007 WL 1412284, 4 (D.N.J.).

Finally, it is inconceivable to me that Congress intended an alien's status to be contingent upon the amount of time that the executive department takes to process a timely and proper petition – a factor completely outside of the control of the alien. This interpretation creates an arbitrary, irrational and inequitable outcome in which approvable petitions will be treated differently depending solely upon when the government grants the approval. Nor do I believe that Congress intended to sanction the disregard that the department has shown towards persons like Osseritta Robinson.  She has committed no crime.   She is innocent of any misbehavior.  She is a grieving widow and the lone parent of the Robinsons' U.S. citizen child.  This same department whose delay or inaction forecloses Osseritta Robinson's chance of becoming an American, now so diligently pursues the avenues of her expulsion.  It contends that the statute is ambiguous and then urges upon us the least reasonable and least humane alternative. My view, wholly in the margin, is that it is untoward of this nation of immigrants, we who have passed through the portals of citizenship, to coldly and impassively slam the door behind us on innocent aspirants who dream to follow.

Because I read the plain language and structure of §1151(b)(2)(A)(i) as enabling Robinson to be classified as an immediate relative, I dissent.

---

[13]I am aware that Robinson can seek from Congress a private bill to prevent her removal, but this extraordinary relief is outside of the scope of the INA.  Our task in interpreting statutes is to remain within the four corners of the statute and regulations to ascertain whether a particular interpretation yields unreasonable or arbitrary results.

23