PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1462

_____

CARMEN JOSEFINA CONTRERAS AYBAR;
DARIO DE JESUS MORETA CONTRERA,

Appellants

v.

SECRETARY UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
DIRECTOR UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES;
DIRECTOR UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES VERMONT;
ATTORNEY GENERAL UNITED STATES OF AMERICA;
UNITED STATES ATTORNEY NEW JERSEY

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-16-cv-01539)
District Judge: Honorable Esther Salas

_____

Argued November 6, 2018

Before: AMBRO, SCIRICA, and RENDELL, <u>Circuit Judges</u>

(Opinion filed: February 19, 2019)

Joshua S. Cohn, Esquire
James I. McClammy, Esquire
Benjamin Zhu, Esquire (Argued)
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017

Samuel I. Portnoy, Esquire
Gibbons
One Gateway Center
Newark, NJ  07102

      Counsel for Appellants

Chad A. Readler
  Acting Assistant Attorney General, Civil Division
William C. Peachey
  Director, Office of Immigration
  Litigation, District Court Section
Gisela A. Westwater
  Assistant Director, District Court Section
Alexander J. Halaska, Esquire (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC  20044

Counsel for Appellees

Gary W. Kubek, Esquire
Matthew D. Forbes, Esquire
Meryl Holt Silverman, Esquire
Elizabeth Costello, Esquire
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY  10022

Counsel for Amicus Curiae

_____

OPINION OF THE COURT

_____

AMBRO, Circuit Judge

Carmen Josefina Contreras Aybar ("Carmen") became a lawful permanent resident under provisions of the Immigration and Nationality Act ("INA") known as the "U Visa" statute.  She then sought permanent resident status for her son, Dario, based on a related provision of the INA, 8 U.S.C. § 1255(m)(3), which empowers the U.S. Department of Homeland Security ("DHS") to grant that status to certain family members, including a "child," of an immigrant in Carmen's situation.  But that application hit a snag:  while it was pending Carmen's son reached the age of twenty-one, which made him ineligible under a DHS regulation that implements § 1255(m)(3).  Citing that regulation, it denied the application.

3

Carmen and her son challenge the regulation as contrary to § 1255(m)(3) as well as being arbitrary and capricious. But we cannot sustain that challenge. Instead we hold that § 1255(m)(3) unambiguously requires DHS to assess the familial relationship required under that statute as it exists when DHS decides the application, even though this means a child can "age out" of eligibility while an application is pending. The DHS regulation in question adheres to this unambiguous meaning of the statute, as did DHS's denial of Carmen's application. We thus affirm the District Court's grant of summary judgment in favor of the Government.

## I.    Background

### A.  Legal Framework

In 2000 Congress passed legislation that created a new nonimmigrant visa classification—the U Visa—within the INA. *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464. It is a temporary legal status offered to victims of rape and other specified crimes who have cooperated, or are likely to cooperate, in the investigation and prosecution of those crimes. *See* 8 U.S.C. § 1101(a)(15)(U)(i). Congress passed the statute to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute" the specified crimes, and to "offer[] protection to victims of such offenses in keeping with the humanitarian interests of the United States." Pub. L. No. 106-386, § 1513(a)(2)(A). The statute also gives a pathway to permanent resident status: after three years of holding a U Visa, an alien may apply for permanent resident status under a provision of the INA, 8 U.S.C. § 1255(m)(1), that applies specifically to holders of U Visas.

Certain U-Visa benefits also extend to qualifying family members. Persons who are seeking or have already obtained

4

permanent resident status based on their receiving a U Visa, such as Carmen, may seek that status for a qualifying family member under 8 U.S.C. § 1255(m)(3). It states:

> Upon approval of adjustment of status under [8 U.S.C. § 1255(m)(1)] of an alien [who received a principal U Visa,] the Secretary of Homeland Security may adjust the status of or issue an immigrant visa to a spouse, a child, or, in the case of an alien child, a parent who did not receive a [derivative U Visa] if the Secretary considers the grant of such status or visa necessary to avoid extreme hardship.

8 U.S.C. § 1255(m)(3). The term "child" is defined elsewhere in the INA as "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1).

DHS has promulgated regulations setting procedures and criteria for obtaining permanent resident status under 8 U.S.C. § 1255(m)(3). *See* 73 Fed. Reg. 75,548–51 (Dec. 12, 2008). They contain a provision that requires a § 1255(m)(3) applicant to meet the eligibility criteria through the time DHS decides the application:

> The qualifying family relationship, [such as a parent–child relationship], [must] exist[] at the time of the U–1 principal's adjustment and continue[] to exist through the adjudication of the adjustment or issuance of the immigrant visa for the qualifying family member.

8 C.F.R. § 245.24(g)(2). The parties refer to this regulation as an "age-out regulation" because it creates the risk that a child on whose behalf an application is filed under § 1255(m)(3) will "age out" of eligibility before DHS acts on the application.

5

### B. Facts and Procedural History

Carmen is a former citizen of the Dominican Republic who entered the United States in 2005. The victim of a rape in New York City, she assisted law enforcement with their investigation and, on that basis, obtained a U Visa from DHS. After holding the U Visa for more than three years, she obtained permanent resident status under 8 U.S.C. § 1255(m)(1).

After doing so, Carmen began the process to obtain the same status for her son, Dario. She chose to do so under 8 U.S.C. § 1255(m)(3). Dario was one day shy of his twenty-first birthday when Carmen began the application process by filing the first of two petitions that were required under the DHS regulations implementing the statutory provision.

Although it initially approved Carmen's petition, DHS later revoked its approval and denied the petition because, by the time DHS decided it, Dario "had reached the age of 21 years and did not meet the definition of child for immigration purposes." Carmen appealed that decision to the Administrative Appeals Office of the U.S. Citizenship and Immigration Services ("Immigration Services"), which dismissed the appeal based on 8 C.F.R. § 245.24(g)(2), the age-out regulation noted above. It held the regulation was a permissible implementation of § 1255(m)(3) that mandated denial of Carmen's petition.

Carmen and Dario then filed a complaint in the District Court under the Administrative Procedure Act, asserting that the age-out regulation is invalid because it exceeds DHS's authority under 8 U.S.C. § 1255(m)(3) and is arbitrary and capricious. On cross-motions for summary judgment, the District Court granted summary judgment in favor of the Government and denied it to Carmen and Dario, thus ruling the

6

regulation is a valid means to implement 8 U.S.C. § 1255(m)(3). They appeal to us.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331 to review DHS's denial of the application because it rested on DHS's "interpretation of the legal standards for eligibility for such adjustment." *Zheng v. Gonzales*, 422 F.3d 98, 111 (3d Cir. 2005). We have jurisdiction over the District Court's grant of summary judgment under 28 U.S.C. § 1291, and we review *de novo* that Court's grant of summary judgment. *See Dwyer v. Cappell*, 762 F.3d 275, 279 (3d Cir. 2014).

## III.    Discussion

Carmen and Dario contend the age-out regulation is not a valid implementation of 8 U.S.C. § 1255(m)(3). We consider this contention under the familiar *Chevron* framework: "first, if the statute is clear we must give effect to Congress' unambiguous intent, and, second, if the statute is silent or ambiguous with respect to a specific issue, we defer to an implementing agency's reasonable interpretation of that statute." *De Leon–Ochoa v. Att'y Gen.*, 622 F.3d 341, 348 (3d Cir. 2010) (citing *Chevron, USA, Inc.* v. *Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). Put another way, "[i]f Congress has directly and clearly spoken to the question at issue, our *Chevron* analysis is complete at step one, and Congress's unambiguous intent controls." *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Security*, 783 F.3d 156, 164 (3d Cir. 2015).

To determine whether a statutory provision is "unambiguous," we consider the text of the provision and the broader context of the statute as a whole, but we do not

7

consider legislative history. *Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs.*, 794 F.3d 383, 391 (3d Cir. 2015) (citing *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008)).[1] We also acknowledge the principle that courts "are obligated to construe statutes sensibly and avoid constructions which yield absurd or unjust results." *United States v. Fontaine*, 697 F.3d 221, 227 (3d Cir. 2012) (internal quotation marks omitted); *see also Hanif v. Att'y Gen.*, 694 F.3d 479, 483–84 (3d Cir. 2012). We consider each of these guideposts in turn.

**A. Text**

The Government contends the plain terms of the statute require DHS to determine eligibility at the time it rules on a § 1255(m)(3) application. For this argument, the Government leans on the grammatical structure of the provision, which, by its literal terms, only authorizes DHS to grant permanent resident status to "a spouse, a child, or . . . a parent" of the principal U-Visa holder. It argues that, in the case of a child application, it cannot grant the application if the person in question has reached the age of twenty-one before his status is adjusted, as he no longer is a child under 8 U.S.C. § 1101(b)(1).

The Government's reading of § 1255(m)(3) finds support in *Robinson v. Napolitano*, 554 F.3d 358 (3d Cir. 2009). There we reviewed Immigration Services' denial of a U.S. citizen's application for permanent resident status for his spouse under a provision of the INA that allows those applications for "immediate relatives" of U.S. citizens. *Id.* at 363. While the application was pending, the U.S. citizen died unexpectedly. *Id.* at 360. Immigration Services then denied

---

[1] Although we do not rest our interpretation of the statute on legislative history, we thank the *amicus curiae*, Her Justice, for its thorough and valuable submission on that subject.

the application, ruling the widow was not a "spouse" under the INA at the time the application was decided; hence the widow could not obtain permanent resident status as an "immediate relative." *Id.* at 363. The statute in question stated that DHS "shall, if [it] determines that the facts stated in the petition are true and that the alien in [sic] behalf of whom the petition is made is an immediate relative . . . , approve the petition." *Id.* (emphases omitted). We agreed with Immigration Services' interpretation of the statute, holding that "eligibility for an immediate relative visa depends upon the alien's status at the time [Immigration Services] adjudicates the [applicable] petition, not when that petition was filed." *Id.* at 364. The grammatical structure of the statute in *Robinson* is similar to the structure of § 1255(m)(3) in that both statutes, by their literal terms, imply an equivalence in time between the eligibility criteria ("immediate relative" in *Robinson*; a "child" here) and DHS's authority to grant benefits ("shall . . . approve" in *Robinson*; "may adjust" here). *Robinson*'s approach to a similar statute thus cuts in favor of the Government's interpretation of § 1255(m)(3).

For their textual argument, Carmen and Dario focus on the phrase "[u]pon approval of adjustment of status" in § 1255(m)(3). They contend this phrase establishes the timing of the "child" determination DHS must make because the word "upon" is a temporal word and the rest of § 1255(m)(3) is linked to this timing. We are not persuaded. "Upon approval of adjustment of status" imposes a precondition to DHS's consideration of an application under § 1255(m)(3); it does not require DHS to determine eligibility under § 1255(m)(3) by looking back to the state of affairs when the principal U-Visa holder obtained LPR status.

9

In sum, the text favors the Government's position that a potential beneficiary's status as a "child" must be evaluated when DHS rules on the § 1255(m)(3) application.

## B. Statutory Context

We next consider other provisions of the U-Visa statute and the INA to probe further the meaning of § 1255(m)(3). Two provisions of the statute stand out as relevant. The first is 8 U.S.C. § 1101(a)(15)(U)(ii)(I), which extends derivative U-Visa eligibility to the "unmarried siblings" of a U-Visa holder. They are siblings who are "under 18 years of age *on the date on which such alien applied for* [*U-Visa*] *status*." *Id.* (emphasis added). This provision suggests that, when Congress wants a derivative U-Visa applicant's age to be determined as of the application date, it says that explicitly. Similarly, the U-Visa statute expressly protects against the age-out problem for derivative U-Visa applications as opposed to the permanent resident application we review here. For the former, a child applicant "shall continue to be classified as a child" for purposes of the derivative U-Visa application even if the child attains the age of twenty-one while the parent's application is pending. *See* 8 U.S.C. § 1184(p)(7)(A). No equivalent safeguard applies to applications under § 1255(m)(3).

A similar suggestion stems from provisions of the Child Status Protection Act. Pub. L. No. 107-208, 116 Stat. 927. Among other things, it protects child asylum applicants by fixing their ages for asylum purposes as of when they submit their applications, thus protecting them against the age-out problem. *See* 8 U.S.C. § 1158(b)(3)(B). But, as the District Court observed, that implies that other children seeking immigration benefits could still age out of eligibility.

In short, the broader context of the statute also favors the Government's interpretation of § 1255(m)(3).

## C. The Absurdity Principle

Appellants urge that several "absurd" results would flow from reading § 1255(m)(3) as containing an age-out mechanism for child applicants. It would put child applications at the whim of agency processing times, over which applicants have absolutely no control. It also would make it impossible to predict a child's eligibility under the statute at the time of filing an application. And it would mean that two identically situated children—twin children of a woman who obtains U-1 immigrant status, for example—might be denied or granted LPR status based purely on how quickly DHS processes their separate applications.

There is heft to these arguments and, were we writing on a blank slate, we may well be swayed. But, unfortunately, we are not because Congress and the Supreme Court do not appear to view "aging out" of immigration benefits as an absurdity. Congress made that viewpoint clear in, among other laws, the Child Status Protection Act, which protects certain categories of children from aging out of immigration benefits while their applications are pending. The incomplete coverage of that Act implies Congress knows but has not addressed when children not protected by it may still be subject to aging out of eligibility due to the vagaries of the application process. Similarly, in a recent decision, the Supreme Court acknowledged without pause the potential for "aging out" under the immigration laws. *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 45 (2014) (discussing the "aging out" phenomenon in the immigration context and observing that "someone who was a youngster at the start of the process may be an adult at the end, and no longer qualify for an immigration status given to minors"). We view these authorities as fatal to

11

appellants' arguments based on the arguably absurd results of a literal interpretation of § 1255(m)(3).

*　　*　　*　　*　　*

We hold that 8 U.S.C. § 1255(m)(3) unambiguously requires DHS to determine qualifying family member status when it decides an application per that provision. It adhered to that interpretation of the statute when it denied Carmen's § 1255(m)(3) application for permanent resident status on behalf of her son because he was no longer a child when it ruled on the application. Hence our analysis concludes here, and we affirm the District Court's entry of summary judgment for the Government.