Carolyn Robb HOOTKINS,
et al., Plaintiffs,

v.

Janet NAPOLITANO, U.S. Department
of Homeland Security, et al.,
Defendants.

Case No. CV 07–5696–CAS (MANx).

United States District Court,
C.D. California,
Western Division.

April 28, 2009.

Alan R. Diamante, Alan R. Diamante Law Offices, Los Angeles, CA, Brent W. Renison, Parrilli Renison, Lake Oswego, OR, for Plaintiffs.

Elizabeth J. Stevens, Patricia E. Bruckner, John P. Devaney, U.S. Department of Justice Office of Immigration Litigation, Washington, DC, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO ALL PLAINTIFFS OUTSIDE THE NINTH CIRCUIT DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS IN THE NINTH CIRCUIT AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT**

CHRISTINA A. SNYDER, District Judge.

## I. INTRODUCTION AND BACKGROUND

On August 30, 2007, plaintiffs,[1] on behalf of themselves and others similarly situat-

---

1. Plaintiffs included in the complaint are Carolyn Robb Hootkins, Ana Maria Moncayo–Gigax, Suzanne Henriette De Mailly, Sara Cruz Vargas de Fisher, Raymond Lockett, Elsa Cecilia Brenteson, Pauline Marie Gobeil, Dahianna Heard, Rose Freeda Fishman–Corman, Khin Thidar Win, Diana Gejac Engstrom, Maria Del Carmen Diaz–Ruiz, Gladys Walsh, Li Ju Lu, Yelena Arias Angulo, Purita Manuel Pointdexter, Tracy Lee Rudl, Dieu Ngoc Nguyen, Agnieszka Bernstein, Sarah Bayor, Stella Standifer, and Farah Batool. On April 28, 2009, plaintiffs and defendants filed a joint stipulation dismissing plaintiffs Heard, Walsh, Win, Simmons (Rudl), and Po-

ed, filed the instant class action case. On January 28, 2008, the Court denied plaintiffs' motion for summary judgment without prejudice to its being renewed. On March 17, 2008, the Court granted in part and denied in part defendants' motion to dismiss plaintiffs' complaint. Specifically, the Court granted defendants' motion to dismiss plaintiffs Hootkins', Moncayo–Gigax, Vargas de Fisher's, Lockett's, Brenteson's, Win's, Engstrom's, Pointdexter's, Rudl's, Standifer's, and Batool's claims under the Administrative Procedure Act ("APA") for lack of final agency action, but denied defendants' motion to dismiss plaintiffs claims under the Mandamus Act and denied defendants' motion to dismiss the claims of those plaintiffs residing outside of the jurisdiction of the Ninth Circuit.

On March 20, 2008, plaintiffs filed their operative first amended complaint ("FAC"). Plaintiffs seek injunctive, declaratory, and mandamus relief under the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701 *et seq.;* the Mandamus Act, 28 U.S.C. § 1361; and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* against Michael Chertoff, Secretary of the Department of Homeland Security ("DHS"); and Jonathan Scharfen, Acting Director of United States Citizenship and Immigration Services ("USCIS"), in their official capacities.[2] The current defendants in this action are Janet Napolitano, Secretary of DHS, and Michael Aytes, Acting Deputy Director of USCIS, in their official capacities (collectively, "defendants" or the "government").

The FAC alleges that defendants wrongfully determined that plaintiffs are not entitled to immediate relative status for purposes of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1151 *et seq.* due to the death of their U.S. citizen spouses.[3]

---

indexter, on the ground that these plaintiffs have been granted Lawful Permanent Resident status.

**2.** The original complaint also named Condoleezza Rice, United States Secretary of State, and Maura Harty, Assistant Secretary for the Bureau of Consular Affairs, in their official capacities, as defendants. By order dated March 16, 2008, the Court dismissed the United States Department of State as a defendant. The plaintiffs terminated Maura Harty as a defendant when they filed their FAC.

**3.** "Immediate relative" is a term defined in 8 U.S.C. § 1151(b)(2)(A)(i):

For purposes of ... subsection [1154(b)(2)(A)(i)], the term immediate relative means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 204(a)(1)(A)(ii) [8 U.S.C. § 1154(a)(1)(A)(ii)] within 2 years after such date and only until the date the spouse remarries. For purposes of this clause, an alien who has filed a petition under clause (iii) or (iv) of section 204(a)(1)(A) of this Act [8 U.S.C. § 1154(a)(1)(A)] remains an immediate relative in the event that the United States citizen spouse or parent loses United States citizenship on account of the abuse.

8 U.S.C. § 1151(b)(2)(A)(i) (internal quotations omitted).

To receive an immigrant visa by virtue of one's status as an "immediate relative" spouse, the alien's United States citizen spouse must first petition the Attorney General, by filing a Form I–130 petition, claiming that the alien spouse is entitled to "immediate relative" status. 8 C.F.R. § 204.1(a)(1). With respect to aliens who entered the United States on a K–1 fiancé visa, the citizen spouse must file a Form I–129F with USCIS. 8 C.F.R. § 214.2(k). The citizen spouse, or a permissible alternative sponsor, must also execute a Form I–864, affidavit of support. 8 U.S.C. § 1182(a)(4)(C)(ii).

In contrast, defendants assert that in order to be considered an "immediate relative" spouse for purposes of 8 U.S.C. § 1151 *et seq.*, a surviving alien spouse must have been married to his or her petitioning citizen spouse for at least two years prior to the U.S. citizen spouse's death.

With respect to plaintiffs' challenge to defendants' interpretation of 8 U.S.C. § 1151(b)(2)(A)(i), plaintiffs request that the Court compel defendants (1) to find, as a matter of statutory construction, that plaintiffs are "immediate relative" spouses for purposes of the INA and were not stripped of their status of "spouse" of a United States citizen upon the death of their citizen spouse; (2) to reopen and adjudicate their deceased citizen spouses' immigrant I–130 petitions; and (3) to reopen and adjudicate (a) plaintiffs' applications for adjustment of status or (b) plaintiffs' immigrant visa applications. Plaintiffs also seek an injunction prohibiting defendants from using the death of a citizen spouse as a discretionary factor in the adjudication of I–130 petitions and I–485 applications.[4]

The FAC also challenges the legality of 8 C.F.R. § 205.1(a)(3)(i)(C), which calls for automatic revocation of an I–130 upon the death of the citizen spouse in cases where: (1) the I–130 petition has been approved but (2) there has been no final decision on the alien's I–485 application. 8 C.F.R. § 205.1(a)(3)(i)(C)(2) affords relief from revocation, but requires alien spouses whose U.S. citizen petitioning spouses have died to request humanitarian reinstatement of their I–130 petition, and to come forward with a substitute affidavit of support from a relative willing to serve as a substitute sponsor. In this regard, plaintiffs seek a declaration to the effect that it is improper to revoke the approval of an I–130 petition unless the alien spouse requests humanitarian reinstatement under 8 C.F.R. § 205.1(a)(3)(i)(C)(2), and that 8 C.F.R. § 205.1(a)(3)(i)(C)(2) is invalid as a matter of law. Plaintiffs also seek an injunction prohibiting defendants from revoking, in cases in which the United States citizen spouse previously executed a Form I–864, the approval of an I–130 petition under 8 C.F.R. § 205.1(a)(3)(i)(C)(2).

On January 6, 2009, 2009 WL 57031, the Court certified a Ninth Circuit class, defined as

> All aliens whose United States citizen spouse died before the couple's two-year wedding anniversary, and whose citizen spouse filed an I–130 petition and a Form I–864 or I–864EZ affidavit of support on behalf of the alien spouse, so long as he or she can also demonstrate that (1) the Form I–130 petition is now pending with or was adjudicated by a USCIS office located within the jurisdiction of the Ninth Circuit, or (2) at the time of the citizen spouse's death, either the citizen spouse or the alien spouse resided within the jurisdiction of the Ninth Circuit.

The Court further certified a subclass of alien spouses who entered the United States on fiancé visas, defined as

> All aliens who, within ninety days of admission to the United States as a nonimmigrant fiancé, married the petitioning United States citizen, and whose citizen spouse died before the couple's two-year wedding anniversary, so long as he or she can also demonstrate that the citizen spouse filed an I–129F petition and a Form I–864 or I–864EZ affidavit of support on behalf of the alien spouse, and (1) the Form 1–129F petition is now pending with or was adjudicated by a USCIS office located within the jurisdiction of the Ninth Circuit, or (2) at the

---

4. An I–485 is an application to Register Permanent Resident Status or to Adjust Status.

time of the citizen spouse's death, either the citizen spouse or the alien spouse resided within the jurisdiction of the Ninth Circuit.

However, the Court declined to certify a nationwide class, finding that "other circuits clearly have an interest in having their own Courts of Appeals decide the question of the proper interpretation of 8 U.S.C. § 1151(b)(2)(A)(i)."

On March 9, 2009, plaintiffs filed the instant renewed motion for summary judgment. On March 13, 2009, defendants filed the instant motion for partial summary judgment as to the Ninth Circuit plaintiffs and the instant motion for partial summary judgment as to plaintiffs outside the Ninth Circuit. On March 23, 2009, defendants filed an opposition to plaintiffs' renewed motion for summary judgment. On March 27, 2009, plaintiffs filed oppositions to defendants' motions. Replies were filed on April 6, 2009. A hearing was held on April 22, 2009. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II. FACTUAL BACKGROUND

The facts underlying this action are not materially in dispute. Plaintiffs are all aliens who were previously married to United States citizens. With the exception of plaintiff Nguyen's spouse, the U.S. citizen spouses all filed a Form I–130, Petition for Alien Relative ("I–130 petition"), on behalf of plaintiffs pursuant to 8 U.S.C. § 1154(a)(1)(A)(i).[5] The same day that their citizen spouses filed the I–130 petitions, each of the alien plaintiffs, except for plaintiff Lu, filed a Form I–485, Application to Register Permanent Resident Status or to Adjust Status ("I–485 application").[6] Citizen petitioners also submitted an affidavit of support ("I–864") in support of their I–485s.

Except for plaintiff Lu, plaintiffs' United States citizen spouses each died after filing their respective I–130 petitions, but before adjudication of said petitions.[7] For the majority of plaintiffs, USCIS then denied the I–130 petitions based on defendants' determination that plaintiffs were not "immediate relative[s]" for purposes of 8 U.S.C. § 1151 *et seq.* because plaintiffs' citizen spouses died before their two-year marriage anniversary.[8] Plaintiff Lu's I–130 petition was initially approved, but was then automatically revoked by USCIS upon the death of plaintiff Lu's spouse.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any

---

5. Plaintiff Nguyen previously filed and received a Form I–129F, Petition for Alien Fiancé. Plaintiff Nguyen then lawfully entered the United States under the K–1 visa and married her United States citizen fiancé within ninety days of entry. Plaintiff Nguyen subsequently applied for adjustment of status to lawful permanent resident.

6. Because plaintiff Lu was not in the United States, the United States Department of State began processing Lu's immigrant visa after the I–130 petition of Lu's citizen spouse was approved.

7. In the cases of plaintiff Lu, plaintiffs' citizen spouse died before the issuance of the immi-

grant visa, thus resulting in the revocation of the prior approval of their Form I–130's under 8 C.F.R. § 205.1(a)(3)(i)(C).

8. In the case of plaintiff Lockett, defendants ultimately approved the Form I–130 that Lockett's spouse had filed before her death. Plaintiff Batool's petition was denied on the grounds of abandonment, but defendants admit that the death of the citizen petitioner would have otherwise warranted denial of plaintiff Batool's I–130. *See* Defs' Statement of Uncontroverted Facts ("SUF") ¶ 2g. Plaintiff Engstrom's petition has not been denied and is currently pending before USCIS.

material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pacific Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## IV. DISCUSSION

### A. Construction of the Immediate Relative Provisions of the Statute

The INA imposes a numerical quota on the number of immigrant visas that may be issued and/or the number of aliens who may otherwise be admitted into the United States for permanent residence. *See* 8 U.S.C. § 1151(a). However, aliens who are "immediate relative[s]" of United States citizens are exempt from these numerical limitations and may obtain immigrant visas by petitioning for "immediate relative" status.

The definition of "immediate relative" is set forth in 8 U.S.C. § 1151(b)(2)(A)(i). The first sentence of 8 U.S.C. § 1151(b)(2)(A)(i) defines "immediate relatives" as "children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age." The second sentence of 8 U.S.C. § 1151(b)(2)(A)(i) states

> In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 204(a)(1)(A)(ii)        [8        USCS

§ 1154(a)(1)(A)(ii) ] within 2 years after such date and only until the date the spouse remarries

8 U.S.C. § 1151(b)(2)(A)(i).

8 U.S.C. § 1154(a)(1)(A) sets forth the petitioning procedure for immediate relative status. Clause (i) of 8 U.S.C. § 1154(a)(1)(A), governs petitions filed by United States citizens on behalf of their alien spouses, and provides that

any citizen of the United States claiming that an alien is entitled to classification by reason of ... an immediate relative status under section 201(b)(2)(A)(i) [8 USCS § 1151(b)(2)(A)(i) ] may file a petition with the Attorney General for such classification.

Clause (ii) of 8 U.S.C. § 1154(a)(1)(A) governs petitions filed by alien spouses on behalf of themselves and provides

An alien spouse described in the second sentence of section 201(b)(2)(A)(i) [8 USCS § 1151(b)(2)(A)(i) ] also may file a petition with the Attorney General under this subparagraph for classification of the alien (and the alien's children) under such section.

The crux of plaintiffs' position in this action is that the relevant statutes create two separate "tracks" by which an alien spouse of a U.S. citizen may obtain "immediate relative status." In the case where a *U.S. citizen spouse* files a petition for his or her alien spouse under clause (i) of 8 U.S.C. § 1154(a)(1)(A), plaintiffs argue, the second sentence of 1151(b)(2)(A)(i) does not apply; in these cases, the term "spouse" is defined by its plain meaning, which, plaintiffs argue, includes a "surviving" spouse of a U.S. citizen. However, if the *alien spouse on his or her own* files a petition under clause (ii) of 8 U.S.C. § 1154(a)(1)(A), the second sentence of 1151(b)(2)(A)(i) applies, and the alien

spouse may only petition where the alien was a spouse for at least two years at the time of death of the citizen spouse. Defendants, however, interpret the statute differently. Defendants contend that even in the case where a U.S. citizen spouse files a petition for his or her alien spouse prior to death, in order to be considered an "immediate relative" for the purposes of 8 U.S.C. § 1151(b)(2)(A)(i), the alien spouse must have been married to his or her petitioning citizen spouse for at least two years at the time of the citizen spouse's death.

The Court begins by noting that three circuit courts have to date addressed the issues present in the instant action: *Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006); *Robinson v. Napolitano*, 554 F.3d 358 (3rd Cir.2009); and, most recently *Lockhart v. Napolitano*, 573 F.3d 251 (6th Cir.2009).[9] The Ninth Circuit and the Sixth Circuit holdings are in conflict with the holding of the Third Circuit. While the certified class in this action contains only Ninth Circuit plaintiffs, many of the named plaintiffs in this action reside outside of the Ninth Circuit.

### 1. The Ninth Circuit *Freeman* Holding

In *Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir.2006), the Court held that the interpretation of the statute proposed by plaintiffs in the instant action is the correct interpretation. Carla Freeman, ("Mrs. Freeman"), an alien, married Robert Freeman ("Mr. Freeman"), a United States citizen. *Id.* at 1033. Mr. Freeman filed an I–130 petition on Mrs. Freeman's behalf. *Id.* That same day, Mrs. Freeman filed an I–485 application for adjustment of status to that of lawful permanent resident. *Id. Just prior to the couple's first wedding anniversary, Mr. Freeman was

---

**9.** The decision in *Lockhart* was issued on April 8, 2009, subsequent to the filing of briefs in the instant action. The Court nevertheless considers it herein.

killed in a car accident. *Id.* Mr. Freeman's I–130 petition and Mrs. Freeman's I–485 application were still pending at the time. *Id.* USCIS then denied Mrs. Freeman's I–485 application. *Id.* USCIS found that Mrs. Freeman was not entitled to "immediate relative" status because she was no longer the spouse of a United States citizen. *Id.* USCIS ordered Mrs. Freeman to leave the United States. *Id.* She petitioned for a writ of habeas corpus in federal district court challenging this decision. *Id.* The district court denied her petition, and she appealed to the Ninth Circuit. *Id.* The government advanced largely the same arguments before the Ninth Circuit as it does now before this Court:

> The government, relying primarily on the statute's second sentence ("In the case of an alien who was the spouse of a citizen . . ."), read[ ] § 1151(b)(2)(A)(i) as "requiring that in order to be an 'immediate relative' under immigration law the alien 'spouse' (wife) must have been married to the United States citizen 'spouse' (husband) 'for at least 2 years at the time of the citizen's [sic] death.'" Under the government's proffered reading, if the citizen spouse dies before the second anniversary of the qualifying marriage, the alien spouse is no longer considered a 'spouse' and is no longer entitled to an adjustment of status.

*Id.* at 1038.

The Ninth Circuit rejected the government's interpretation, finding that based on its review of the language, structure, purpose, and application of the statute:

> Congress clearly intended an alien widow [or widower] whose citizen spouse has filed the necessary forms *to be* and *to remain* an immediate relative (spouse) for purposes of § 1151(b)(2)(A)(i), even if the citizen spouse dies within two years of the marriage. As such, the widowed spouse re-

mains entitled to the process that flows from a properly filed adjustment of status application. The two-year durational language in the second sentence of § 1151(b)(2)(A)(i) grants a separate right to an alien widow to self-petition, within two years of the citizen spouse's death, by filing a form I–360 where the citizen spouse had not filed an immediate relative petition prior to his death.

*Id.* at 1039 (emphasis in original).

Furthermore, the *Freeman* court noted that defendants' proposed interpretation would lead to incongruous results:

> The government concedes that it had the power to grant the Freemans' application prior to Mr. Freeman's death (and the Freemans' second anniversary). Had it done so, Mrs. Freeman's LPR could not then have been voided by her husband's death, as the statute expressly states. *See* § 1186a(a), (b)(1) (providing that an alien spouse who receives permanent resident status as an immediate relative before the second anniversary of her qualifying marriage does so on a conditional basis, and if the Attorney General determines that prior to the second anniversary of the alien's obtaining status the alien's marriage 'has been judicially annulled or terminated, other than through the death of a spouse,' the Attorney General 'shall terminate the permanent resident status of the alien.' (emphasis added)). This is compelling evidence that Congress did not intend its provision for a widow's self-petition for adjustment of status to have an implicit collateral consequence of terminating a spouse's already pending petition—particularly when the effect would be to foreclose a grieving widow from any adjustment at all 'through the death of [her] spouse.'

*Freeman,* 444 F.3d at 1042. In other words, the *Freeman* court found that Con-

gress did not intend for the alien spouses who had been accorded a quick adjudication of his or her permanent resident status to be insulated from having that status terminated at the death of their spouse, but that those who experienced a long administrative delay would have their petition terminated at the death of their spouse.

## 2. The Sixth Circuit *Lockhart* Holding

On April 8, 2009, the Sixth Circuit in *Lockhart v. Napolitano*, 561 F.3d 611, 615 (6th Cir.2009) stated that it was "persuaded by the reasoning of the Ninth Circuit [in *Freeman* ]" and found that "[t]he two-year marriage-duration language in the second sentence of the immediate relative provision appears to be a procedural requirement for a self-petition in the event that the citizen-spouse dies, rather than a restriction on who is considered a 'spouse' when the citizen-spouse petitions on behalf of the alien spouse." *Id.* at 617. Therefore, the court held that a " 'surviving alien-spouse' is a 'spouse' within the 'im-

mediate relative' provision of the INA." *Id.* at 613.

### 3. Application to Plaintiffs in the Ninth and Sixth Circuits

The Court is bound by the holdings of the decisions of *Freeman* and *Lockhart* as to plaintiffs in the Sixth and Ninth Circuits. Therefore, the Court finds that plaintiffs in the Sixth and Ninth Circuits, as surviving spouses of U.S. citizen petitioners, are entitled to "immediate relative" classification under 8 U.S.C. § 1154(a)(1)(A).[10]

### 4. Application to Plaintiffs Outside the Sixth and Ninth Circuits

Defendants argue that *Freeman* (and, by extension, *Lockhart* ) are binding only as to cases that arise within the jurisdiction of the Ninth (and Sixth) Circuits. Defendants argue that the Court should therefore apply defendants' statutory construction to all other plaintiffs in this action.

First, defendants argue that their interpretation of the statute is entitled to *Chev-*

---

**10.** Defendants argue that *Freeman* is not entitled to any weight, even in the Ninth Circuit, because its holding is inconsistent with prior Ninth Circuit precedent. Specifically, defendants cite *Dodig v. INS*, 9 F.3d 1418 (9th Cir.1993) in which a petitioner's I–130, filed by her U.S. citizen spouse, was revoked due to the citizen spouse's death. The Ninth Circuit rejected the petitioner's argument that she should have been granted relief for "humanitarian" reasons under 8 C.F.R. § 205.1(a)(3) because her U.S. citizen husband died prior to the adjudication of the I–130 petition that he had filed on her behalf. Defendants argued that, in so holding, the Ninth Circuit "implicitly endorsed the construction that a widow(er) was not considered a spouse such that she could proceed under the first sentence of § 1151(b)(2)(A)(i). Defs' Mot. as to Ninth Cir. Pls' ("Defs' 9th Cir. Mot.") at 14; *see also Abboud v. INS*, 140 F.3d 843 (9th Cir.1998) (citing *Dodig* and finding that "humanitarian relief is not available under [8 C.F.R. § 205.1(a)(3) ] where the petitioner has died prior to the approval of

the Relative Petition."). Defendants argue that "[b]ecause the *Freeman* panel was not free to overturn the holdings of the prior panels absent clarification *en banc* or by the Supreme Court" the *Freeman* decision should not be given any weight by the Court. Defs' 9th Cir. Mot. at 14.

However, defendants are incorrect. In *Freeman*, the Ninth Circuit explicitly stated that the issue of the proper definition of "spouse" was a matter of first impression before the Court. 444 F.3d at 1033. While *Dodig* and *Abboud* could be read as implicitly accepting defendants' construction of the term "spouse" under the statute, it does not appear that the issue of the proper construction of the term "spouse" was ever raised by the parties in either of those cases. Instead, the narrower question in those cases was the application of the humanitarian reinstatement provision. Because the Court in *Dodig* and *Abboud* did not explicitly address the issue of the proper construction of spouse, the holding of *Freeman* is not inconsistent with prior Ninth Circuit precedent.

*ron* deference. *See Chevron U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The first step of the *Chevron* statutory construction analysis is to determine whether the intent of Congress is clear; if so, that clear intent controls. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. Defendants argue that their construction of the statute is clearly correct because, by its plain terms, the term "spouse" refers to someone who is currently married. Defs' 9th Cir. Mot. at 8. Therefore, defendants argue, when their U.S. citizen spouses died, plaintiffs no longer qualified as an "immediate relative" because they were no longer a "spouse" of a U.S. citizen. Defs' 9th Cir. Mot. at 8, 12, citing Black's Law Dictionary 1438–39 (8th ed.2007) (defining spouse as a "married person"); 1 U.S.C. § 7 ("In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States … the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife.").

As a result, defendants argue, the first sentence of 8 U.S.C. § 1151(b)(2)(A)(i)—which states that "spouses" of U.S. citizens are "immediate relatives" for immigration purposes—does not apply to former spouses of deceased U.S. citizens. Instead, defendants argue, the only part of the statute that may apply is the second sentence of § 1151(b)(2)(A)(i), which creates a narrow exception for an alien who "*was* the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death …" Defs' 9th Cir. Mot. at 9, quoting 8 U.S.C. § 1151(b)(2)(A)(i) (emphasis added). In other words, when an alien is no longer the spouse of a U.S. citizen due to the U.S.

citizen's death, the alien is not entitled to "immediate relative" status unless his or her marriage lasted two years or more. Defs' Opp'n at 7.

Defendants next argue that, even if the plain language of the statute is ambiguous, defendants' interpretation is nevertheless entitled to deference under the second step of *Chevron,* because it is consistent with BIA decisions and long-standing administrative interpretations *See* 467 U.S. at 842–43, 104 S.Ct. 2778 *see also* 8 C.F.R. 1003.1(g) ("[e]xcept as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board … shall be binding on all officers and employees of the Department of Homeland Security or immigration judges in the administration of the immigration laws of the United States.").

Defendants cite the decision of the Board of Immigration Appeals in *Matter of Varela,* 13 I. & N. Dec. 453 (B.I.A.1970). In *Matter of Varela,* the Board found that because the alien's United States citizen spouse died before the couple's two year marriage anniversary, the alien lost his or her status as a spouse. *See Matter of Varela,* at 454 ("[s]imply stated, at the time of his decision the beneficiary was not the spouse of a United States citizen. His death had stripped her of that status"). Defendants argue that the Board reaffirmed the result in a later decision, *Matter of Sano,* 19 I. & N. Dec. 299 (BIA 1985). In *Matter of Sano,* an alien's petition was denied based on the death of her U.S. citizen spouse. The Board held that it lacked jurisdiction to hear the appeal of the denial of the petition, because such an appeal may only be filed by the visa petitioner (the U.S. citizen spouse), who was deceased.[11]

---

11. In *Freeman,* the Court specifically addressed defendants' contentions regarding *Matter of Varela,* 13 I. & N. Dec. 453, and dismissed them. First, the Court in *Freeman* found that, contrary to defendants' arguments, the decision in *Matter of Sano* actually undermines, rather than supports, *Matter of*

Furthermore, defendants argue that their interpretation is supported by long-standing administrative interpretations. Defendants argue that "prior to the enactment of the INA, the visa petitioner's death has been a basis for revoking the approval of the visa petition (e.g., the I–130) since at least 1938." Defs' Opp'n at 16, citing, e.g., 8 C.F.R. § 25.2. Defendants also argue that their interpretation is consistent with the purpose of family-based immigration policy, which is family unity; "once the U.S. citizen passes away, the purpose is no longer necessarily served by giving the alien widow the ability to adjust her status." [12] Defs' Opp'n at 18.

Defendants further argue that the claim of plaintiff Standifer, who resides in the Third Circuit, is governed by the holding in *Robinson v. Napolitano*, 554 F.3d 358 (3rd Cir.2009), which upheld defendants' construction of the statute. In *Robinson*, the court held that "the two-year marriage requirement applies to both groups of surviving spouses, those for whom the citizen spouse had filed the petition before his death and those for whom the citizen spouse had not filed the petition." [1314]

*Varela*. In *Matter of Sano*, 19 I. & N. Dec. 299 (BIA 1985), the BIA held that it lacked jurisdiction to hear an appeal from a beneficiary, and instead could only hear an appeal from a petitioner. *Id.* at *300–01 The BIA therefore held that its decision in *Matter of Varela* was "inappropriate" and that "to the extent that our decision in *Matter of Varela, supra*, conflicts with this conclusion, it is hereby modified." *Id.* at *300–01. The *Freeman* court therefore found that the *Varela* opinion's weight was undercut by the BIA's finding in *Matter of Sano* that it was "extra-jurisdictional." *Freeman*, 444 F.3d at 1038. Furthermore, the *Freeman* court found that "the BIA's interpretation [in *Varela*], to the extent it is entitled to some deference, is not a permissible construction of the statute." *Id.* at 1038.

12. Plaintiffs, however, argue that "allowing the U.S. citizen's express wish ... to be fulfilled by granting his or her spouse immediate relative classification does, in fact, promote family unity. In many cases, there are children born of the marriage, and grandparents who wish to see their deceased son or daughter's children remain with them as a family unit in the United States." Pls' Reply at 9.

13. The majority opinion in *Robinson* held 8 U.S.C. 1151(b)(2)(A)(i) to be unambiguous, finding that "the two-year marriage requirement applies to both groups of surviving spouses, those for whom the citizen spouse had filed the petition before his death and those for whom the citizen spouse had not filed the petition." *Id.* at 364; *see also id.* at 366 (holding that "[t]he fact that Black's Law Dictionary's entry for spouse defines 'surviving spouse' separately disproves Robinson's

hypothesis" and "to conclude that 'spouse' and 'surviving spouse' have the identical meaning is illogical and is contrary to our understanding of the legal effect of death on a marriage."). The court went on to hold that "eligibility for an immediate relative visa depends upon the alien's status at the time US-CIS adjudicates the I–130 petition, not when that petition was filed." *Id.* at 364. Because an alien is not a "spouse" of a U.S. citizen after the spouse's death, the alien automatically becomes ineligible for immediate relative status after the death of his or her spouse, unless the two-year marriage exception applies. In so holding, the *Robinson* court found the verb tense used in 8 U.S.C. § 1154(b) to be instructive. That provision provides

> After an investigation of the facts in each case, ... the Attorney General shall, if he determines that the facts stated in the petition *are* true and that the alien in behalf of whom the petition is made *is* an immediate relative specified in section 201(b) ... approve the petition.

U.S.C. § 1154(b) (emphasis added). The majority in *Robinson* held that "[t]he use of the present tense in 8 U.S.C. § 1154(b) belies Robinson's contention that an alien's marital status at the time of filing the I–130 petition controls, and makes plain that the facts in the petition—including the alien's spousal status—must be true at the time USCIS decides the petition." *Id.; but see id.* at 368 (Nygaard, J., dissenting) ("[I]t is inconceivable to me that Congress intended an alien's status to be contingent upon the amount of time that the executive department takes to process a timely and proper petition—a factor completely outside of the control of the alien").

*Robinson,* 554 F.3d at 363.

Plaintiffs, however, contend that the reasoning set forth in *Freeman* is persuasive, and that, therefore, the Court should apply *Freeman,* 444 F.3d 1031, to the claims of all plaintiffs, even those residing outside of the Ninth and Sixth Circuits. Plaintiffs also argue that the Court should decline to apply *Robinson* to plaintiff Standifer's claim because the holding in *Robinson* was "fatally flawed." Pls' 9th Cir. Opp'n at 2, citing *Robinson,* 554 F.3d at 367 (Nygaard, J., dissenting).[15]

■ Despite plaintiff's arguments, the Court declines to apply the holdings in *Freeman* and *Lockhart* to plaintiffs outside of the Ninth and Sixth Circuits. The Court is mindful of the importance of allowing the government to litigate legal issues before different courts throughout the country. As Justice Rehnquist explained, preventing the government from doing so "would deprive [the] [Supreme] Court of the benefit it receives from permitting several court of appeals to explore a difficult question before [the] [Supreme] Court grants certiorari." *United States v. Mendoza,* 464 U.S. 154, 159, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (holding that the Unit-

ed States may not be collaterally estopped from litigating an issue that was adjudicated against it in a prior lawsuit brought by a different party); *see also Nielsen Lithographing Co. v. NLRB,* 854 F.2d 1063, 1066–67 (7th Cir.1988) (holding that a circuit should not make rulings interpreting administrative regulations, which ruling purport to affect other circuits, and that an agency therefore does not have to accept one circuit's ruling as binding throughout the country.). Furthermore the Ninth Circuit, in the context of conflicting circuit law on statutory construction, has recognized that "[t]he courts do not require an agency of the United States to accept an adverse determination ... by any of the Circuit Courts of Appeals as binding on the agency for all similar cases throughout the United States" and "[i]t is standard practice for an agency to litigate the same issue in more than one circuit" where the circuit has not yet developed precedent. *U.S. v. AMC Entertainment, Inc.,* 549 F.3d 760, 771–72 (9th Cir.2008) (citing *Railway Labor Executives' Ass'n v. I.C.C.,* 784 F.2d 959 (9th Cir.1986)) (internal quotations omitted). Therefore, the Court declines to apply *Freeman* and *Lockhart* to plaintiffs outside the Ninth and Sixth Circuits.[16]

---

**14.** Defendants also note that, in addition to the Third Circuit holding in *Robinson,* other district courts have upheld their construction of the statute. *See, e.g., Burger v. McElroy,* 1999 WL 203353 (S.D.N.Y.1999) ("Plaintiff Burger married Stephen Burger on July 20, 1996, and had been married to him for less than three months when Stephen Burger died on October 7, 1996. Therefore, neither she nor her daughter are eligible for classification as immediate relatives ....")

**15.** Specifically, plaintiffs argue that in *Robinson,*

[t]he majority opinion evinced a fundamental misunderstanding of the routine processing times for administrative adjudication, assuming that USCIS rarely if ever acts fast enough to grant applications before two years of marriage. During oral argument, Circuit Judge Sloviter, who au-

thored the majority opinion, asked the government about the 'rare case' in which the agency acts within two years of marriage. Contrary to the government response, which was to say that they could not say it never happens, it is not the rare case that an application is approved where the marriage has not lasted two years, but the norm.

Pls' Mot. at 22–23, citing http://www.uscis.gov/ articles, in which average wait times are listed as below 24 months.

**16.** Plaintiffs argued at the hearing that defendants have waived the right to have the claims of non-Ninth Circuit plaintiffs decided in another Court, because they did not raise improper venue, and did not move with reasonable promptness for a transfer of venue. However, because the non-Ninth Circuit plaintiffs do not appear to have any Ninth

■ Furthermore, just as the Court applies the decisions in *Freeman* in the Ninth Circuit and *Lockhart* in the Sixth Circuit, the Court applies the holding of *Robinson* to plaintiff Standifer in the Third Circuit.[17] "In general, a federal circuit applies its own interpretation of federal, law, not that of another circuit." *Crowther v. INS*, 1995 WL 492893, 1995 U.S.App. LEXIS 24352 (9th Cir.2005). However, to prevent forum shopping, a court may apply a different circuit's law where "the forum-changing party has "no contacts" with the chosen forum." *Crowther*, 1995 WL 492893, 1995 U.S. LEXIS 24352; *see also Maldonado–Cruz v. U.S. Dep't of Immigration & Naturalization*, 883 F.2d 788, 790 (9th Cir.1989) (analyzing alien's contacts with the Ninth Circuit and the Fifth Circuit and determining that, based on the contacts, it was appropriate to apply Ninth Circuit law). Plaintiffs do not allege that plaintiff Standifer has any Ninth Circuit contacts. Therefore, in the interests of preventing forum shopping, the Court applies the holding of *Robinson* to plaintiff Standifer.

### 5. Plaintiff Nguyen

Defendants argue that, even under *Freeman*, 444 F.3d 1031, a Ninth Circuit plaintiff cannot qualify for adjustment of status due to the termination of her marriage upon the death of her U.S. citizen spouse. *See* Defs' Ninth Cir. Mot. at 30. Unlike other plaintiffs, Nguyen entered the United States on a K–1 fiance(e) visa. Plaintiff married her husband within 90 days of

entry, on April 19, 2004, as required by 8 C.F.R. § 214.2(k)(6)(ii). Plaintiff Nguyen and her spouse timely filed a Form I–485 to adjust status, and her spouse timely filed the requisite I–864 Affidavit of Support. Plaintiff Nguyen's spouse died on March 24, 2005, and her petition was denied on November 30, 2005.

8 U.S.C. § 1255(d) provides that "[t]he Attorney General may not adjust . . . the status of a nonimigrant alien . . ." who entered on a K–1 visa except "on a conditional basis . . . as a result of the marriage of the nonimmigrant . . . to the citizen who filed the petition to accord the alien's nonimmigrant status . . ." Similarly, 8 CFR § 245. 1(c)(6)(i) states that an alien is ineligible for adjustment of status on the basis of a K–1 visa unless "the alien is applying for adjustment of status based upon the marriage of the K–1 fiance(e) which was contracted within 90 days of entry with the United States citizen who filed a petition on behalf of the K–1 fiance(e) . . . ." The statutory scheme further provides that, after two years of conditional permanent resident status, the couple may jointly file to have the "conditional" nature of the permanent resident status removed. If the non-citizen has become ineligible for permanent resident status due to the termination of her marriage "other than through the death of a spouse," he or she may apply for a waiver of the petition requirement by attesting that the marriage was entered into in good faith. 8 U.S.C. § 1186a(c)(4)(B).

Circuit contacts in this case, in the interests of both preventing forum shopping and allowing other circuits to interpret the laws and regulations challenged herein, the Court declines to apply the Ninth Circuit's holding in *Freeman* to plaintiffs outside of the Ninth Circuit.

**17.** Plaintiffs further request that if the Court determines that *Robinson* controls, that the Court nevertheless "hold in abeyance a deci-

sion on her case until the U.S. Supreme Court has denied *certiorari* or issued an authoritative decision." Pls' Mot at 28. Defendants, however, note that "whether a petition for *certiorari* will in fact be filed in *Robinson* at some future date, and whether the Supreme Court will grant *certiorari*, are both speculative." Defs' Opp'n at 25. The Court therefore declines to hold in abeyance plaintiff Standifer's claim.

Defendants begin by correctly noting that the "statutory scheme clearly requires that an alien who enters the United States as a K–1 (like plaintiff Nguyen) may only adjust on a conditional basis after marriage within 90 days of entry to the citizen who filed the fiance(e) petition which allowed the alien entry." Defs' 9th Cir. Mot. at 31. However, defendants next argue that defendants were entitled to determine that plaintiff Nguyen was statutorily ineligible for adjustment of status to conditional permanent resident status under 8 U.S.C. § 1255(a) and (d) "due to the fact that upon the death of her husband, her *marriage* no longer existed and she could not qualify as the current spouse of a U.S. citizen." Defs' 9th Cir. Mot. at 31. Defendants argue that because, under the law of every state, marriage ends when one spouse dies, Nguyen is no longer in a legal marriage, and is thus no longer eligible for adjustment of status. Defs' 9th Cir. Mot. at 31, citing 52 Am.Jur.2d, Marriage, § 8 ("under American law all valid marriages continue in force during the joint lives of the parties or until divorce or annulment").

However, in *Choin v. Mukasey*, 537 F.3d 1116 (9th Cir.2008), the Ninth Circuit held that the "as a result of the marriage" language in 8 U.S.C. § 1255(d) was ambiguous. The Court stated

> The language of [8 U.S.C. § 1255] specifying that a nonimmigrant may adjust status 'as a result of the marriage' can plausibly be interpreted in two ways. As the government argues, it could be interpreted to exclude those petitioners whose marriages no longer exist on the

date of adjudication. On the other hand, as Choin argues, it could also be interpreted to mean that the application must be based on the fact of the marriage. *Id.* at 1119–20.

Furthermore, although defendants argue that the holding of *Freeman* is inapplicable to Nguyen, because her spouse filed an I–129F rather than an I–130, this argument is contradicted by the holding in *Choin*, 537 F.3d 1116. In *Choin*, the Ninth Circuit relied on *Freeman* in examining a case regarding K–1 fiancé visas. Although the facts of *Choin* are somewhat different from those in the instant action, the findings in *Choin* are instructive. In *Choin*, plaintiff entered the United States on a K–1 visa and married her U.S. citizen fiancé within the 90 day period. *Id.* at 1119. However, the Immigration and Naturalization Service ("INS") did not timely process her application for conditional permanent resident status, and after two and a half years, when she and her husband divorced, she had not yet been granted conditional permanent resident status. *Id.* The government argued that, to receive conditional permanent resident status, "an immigrant on [a] K visa must stay married until the government gets around to adjudicating her application for adjustment of status." *Id.* at 1121. The Court disagreed, stating "[a]s in *Freeman*, we here similarly find nothing in the plain language of [8 U.S.C. § 1255(d) ] suggesting that an application that was valid when submitted should be automatically invalid when the petitioner's marriage ends by divorce two years later." *Id.* The Ninth Circuit therefore remanded to the Board for further proceedings consistent with the opinion.[18]

---

18. Defendants argue that *Choin*, 537 F.3d 1116, is not valid precedent, arguing that once the Ninth Circuit in *Choin* found the statute ambiguous, "the panel was not free to make its own interpretation of the governing law. Rather, the remand necessarily required that the issue be addressed by the Board itself." Defs' 9th Cir. Reply at 19, citing *Gonzales v. Thomas*, 547 U.S. 183, 186, 126

S.Ct. 1613, 164 L.Ed.2d 358 (2006) ("A court of appeals is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry ... Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Once again,

■ Based on the holding in *Choin*, the Court finds that plaintiff Nguyen is entitled to summary judgment in her favor. As the court stated in *Choin*, nothing in the plain language of 8 U.S.C. § 1255(d) suggests that plaintiff Nguyen's application, which was valid when submitted, should be automatically invalid because her marriage later ended due to the death of her spouse. *See Choin*, 537 F.3d at 1121. Therefore, defendants acted improperly when they denied plaintiff Nguyen's application solely on the basis that plaintiff Nguyen is no longer married to her deceased United States citizen spouse.[19]

### B. Whether Defendants' Application of *Freeman* is Permissible

The issue before the Court is not only to whom *Freeman*, 444 F.3d 1031, applies, but in addition, whether defendants are currently applying *Freeman* in the Ninth Circuit correctly. Defendants read the *Freeman* decision narrowly. In a November 8, 2007, USCIS Interoffice Memorandum from Mike Aytes, then Associate Director of Domestic Operations, USCIS, to the Field Leadership, (the "Aytes Memorandum"), Aytes instructs that although USCIS will follow *Freeman* in the Ninth Circuit, it will do so only if, prior to the death of the alien's U.S. citizen spouse, the alien and the alien's U.S. citizen spouse had filed, in addition to the I–130 form (the immediate relative petition), an I–485 application (i.e. an application to register permanent residence or adjust status). Such a requirement is, according to USCIS, consistent with the holding in *Freeman*. Additionally, the Aytes Memorandum states that USCIS will automatically revoke the approval of an I–130 petition for an alien whose spouse has died unless the alien spouse presents a request for humanitarian reinstatement under 8 C.F.R. 205.1(a)(3)(i)(C)(2) and submits a substitute affidavit of support (Form I–864) from a qualified substitute sponsor.

### 1. Whether *Freeman* Applies Where an I–485 Application Was Not Filed Prior to the U.S. Citizen Spouse's Death

Plaintiffs argue that defendants cannot limit the holding of *Freeman* to those cases where the alien spouse and his or her U.S. citizen spouse filed an I–485, in addition to the I–130, before the U.S. citizen spouse's death. The crux of plaintiffs' argument is that defendants are impermissibly basing the outcome of a *petition for immediate relative status* (i.e. the approval of an I–130) on the filing of a form governing an alien's *admissibility* (the I–485). Plaintiffs argue that "[d]efendants cannot escape the fundamental rule governing immigrant petitions which states that admissibility concerns are not relevant to petition procedure." Pls' Ninth Cir. Opp'n at 2, citing *Matter of O*, 8 I. & N. Dec. 295 (BIA 1959). In *Matter of O*, the Board determined that "[t]he visa petition procedure is concerned merely with the question of status. It does not concern itself with substantive questions of inadmissibility . . . ."

Plaintiffs argue that *Freeman*, 444 F.3d 1031, supports their position. In *Freeman*, the Court held that an "alien widow whose citizen spouse filed the necessary immediate relative petition form but died within two years of the qualifying mar-

---

defendants fail to recognize that the Court must follow the holding of *Choin*.

**19.** Defendants also cite *Kalal v. Gonzales*, 402 F.3d 948, 950 (9th Cir.2005) to support their argument. However, this case in inapposite.

In *Kalal*, the court found that plaintiff was not entitled to adjustment of status, because she never married her petitioner fiancé, and instead married someone else, in direct contravention to the requirements of the 8 U.S.C. § 1255(d). 402 F.3d at 950.

riage nonetheless remains a spouse for purposes of 8 U.S.C. § 1151(b)(2)(A)(i), and is entitled to be treated as such when DHS adjudicates her adjustment of status application." 444 F.3d at 1039. Plaintiffs essentially argue that the "necessary immediate relative petition form" is the I-130, because the I-130 is the form that establishes eligibility for immediate relative status. Pls' Ninth Cir. Opp'n at 9. Plaintiffs acknowledge that the I-485 is also a "necessary form" in that it is necessary to establish an alien's admissibility, but argue that these grounds for admissibility are found at 8 U.S.C. § 1182(a), and are wholly separate from the grounds for immediate relative status found in 8 U.S.C. § 1154(a)(1)(A)(i) and 8 U.S.C. § 1151(b)(2)(A)(i). Plaintiffs argue that, unlike admissibility considerations, the determination of immediate relative status is non-discretionary, and that "[d]efendants['] efforts to import discretionary criteria into determination under 8 U.S.C. § 1154(a)(1)(A)(i) and 8 U.S.C. § 1151(b)(2)(A)(i) are improper, and subject to judicial review as a matter of law." Pls' Ninth Cir. Opp'n at 3. In other words, while defendants are free to apply lawful grounds of admissibility to plaintiffs' applications for adjustment of status, plaintiffs argue, defendants are not entitled to apply these grounds to a determination of plaintiffs' petition for immediate relative status. Pls' Ninth Cir. Opp'n at 4.

Defendants respond that the holding in *Freeman* was expressly based on the spouse having filed the "necessary forms" which includes, according to defendants, the I-485. The plaintiff in *Freeman* had filed an I-485 prior to her spouse's death, and the Court repeatedly noted that fact. *See Freeman*, 444 F.3d at 1039-40 ("Mrs. Freeman qualified as the spouse of a U.S. citizen when she and her husband petitioned for adjustment of status ..."); *Id.* at 1043 ("Mrs. Freeman completed all the formalities required for an adjustment of [her] status, ... but the immigration authorities had, through no fault of [her or her husband's], failed as yet to act on [her husband's] petition.") (internal citations omitted).[20]

■ The Court finds unconvincing defendants' argument that the *Freeman*, 444 F.3d 1031 holding only applies to those aliens whose petitioning U.S. citizen spouses submitted an I-485 form. Although plaintiff and her U.S. citizen spouse in *Freeman* had filed an I-485 form prior to Mr. Freeman's death, it does not appear that the Court's holding in *Freeman* depended on this fact. Instead, *Freeman* states that where plaintiff and his or her U.S. citizen spouse filed the "necessary immediate relative petition form"—i.e. the I-130—plaintiff is entitled to be treated as a spouse for purposes of 8 U.S.C. § 1151(b)(2)(A)(i). *See* 444 F.3d at 1039. Furthermore, the Court agrees with plaintiffs that defendants appear to be improperly conflating immediate relative status classification and admissibility criteria, by conditioning classification as an immediate

---

**20.** In addition, defendants argue that, regardless, their contested interpretation of the statute has no effect on plaintiff class members. Defs' Ninth Cir. Mot. at 21. Specifically, defendants note that, by definition, class members have submitted, in addition to an I-130 form, an I-864 form, which is an affidavit of support. *See* Ninth Circuit Class Definition, Part I., *supra*. Because the I-864 form is related to admissibility, it is not relevant to the I-130 proceedings, and is instead filed in conjunction with an I-485. Defendants argue that if "an alien has not submitted a Form I-485, it is necessarily the case that the visa petitioner did not submit a Form I-864." Defs' 9th Cir. Mot. at 21. However, nothing in the certified class definition requires that plaintiffs in this action to have necessarily filed an I-485. Therefore, the Court finds defendants arguments that all plaintiffs would have filed an I485 to be speculative.

relative on the submission of an I–485. *See Matter of O.*, 8 I. & N. Dec. 295 (BIA 1959). Therefore, the Court finds and concludes that defendants may not limit the application of the *Freeman* decision to those cases where the alien spouse and his or her U.S. citizen spouse filed an I–485 before the U.S. citizen spouse's death.

## 2. Whether Defendants May Automatically Revoke Approved I–130s, and Require a Request for Humanitarian Reinstatement and Substitute Affidavit of Support

Plaintiffs also seek declaratory relief that, in the case in which an alien spouse dies, defendants act improperly when, in spite of the holding in *Freeman*, they "revoke the approval of an I–130 petition unless plaintiffs-petitioners present a request under 8 C.F.R. § 205.1(a)(3)(i)(C)(2) for humanitarian reinstatement, supported by a Form I–864 executed by an individual who qualifies under section 213(A)(f)(5)(B) of the Immigration and Nationality Act as a qualifying substitute sponsor." [21] FAC ¶ 172.

The challenged regulation at issue is 8 C.F.R. § 205.1(a)(3)(i)(C)(2), which provides that an approved I–130 is revoked upon the "death of the petitioner" unless USCIS determines "as a matter of discretion exercised for humanitarian reasons ... that it is inappropriate to revoke the approval of the petition. USCIS may make this determination only if the principal beneficiary of the visa petition asks for reinstatement of the approval of the petition and establishes that a person related to the principal beneficiary in one of the ways described in section 213A(f)(5)(B) of the Act is willing and able to file an affidavit of support under 8 C.F.R. part 213a as a substitute sponsor."

Plaintiffs argue that, by requiring plaintiffs to petition for humanitarian reinstatement of their approved I–130 after their U.S. citizen spouse dies, defendants are importing discretionary factors into the determination of immediate relative status (i.e. the I–130 process), which is a non-discretionary decision. Pls' Mot. at 19, citing *Hernandez v. Ashcroft*, 345 F.3d 824, 833–34 (9th Cir.2003) ("determinations that require application of law to factual determinations are nondiscretionary"); 8 U.S.C. 1154(b) ("the Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative ... approve the petition ...") (emphasis added). Plaintiffs argue that "[d]efendants' efforts to import discretionary criteria into the determination under 8 U.S.C. § 1154(a)(1)(A)(i) and 8 U.S.C. § 1151(b)(2)(A)(i) are illegal, and subject to judicial review as a matter of law. Pls' Mot. at 19.

The statutory provision governing revocation of approved petitions is 8 U.S.C. § 1155, which states that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and suffi-

---

**21.** Defendants argued for the first time at the hearing that plaintiffs do not have standing to challenge 8 C.F.R. § 205.1(a)(3)(i)(C)(2), because the only named plaintiff who has been subject to automatic revocation of the I–130 petition under 8 C.F.R. § 205.1(a)(3)(i)(C)(2) was otherwise inadmissible and, therefore, revocation had no adverse immigration impact. However, defendants' argument is without merit. First, there is no indication that unnamed class members who may be otherwise admissible do not face an immedi-

ate threat of harm under this regulation, in that their approved I–130 petitions may be improperly revoked upon the death of their spouses. Furthermore, it appears to the Court that an alien may be harmed by automatic revocation of the I–130 petition, even if the alien is ultimately judged to be otherwise inadmissible, because such revocation forces the alien to expend time and resources requesting humanitarian reinstatement of his or her I–130 petition.

cient cause, revoke the approval of any petition approved by him under section 204 [8 USC § 1154]." Plaintiffs argue that the automatic revocation upon the death of the petitioner, as codified in 8 C.F.R. § 205.1 goes "far afield" of this statutory provision. Pls' Mot. at 19. Specifically, plaintiffs argue that the death of a spouse does not constitute "good and sufficient cause" under 8 U.S.C. § 1155. Pls' Mot at 20.

Plaintiffs first note that the BIA has held that in determining what constitutes "good and sufficient cause" under 8 U.S.C. § 1155, the relevant question is whether the evidence "would have warranted a denial based on the petitioner's failure to meet his or her burden of proof." Pls' 9th Cir. Opp'n at 12–13, quoting *Matter of Estime*, 19 I. & N. Dec. 450, 451 (BIA 1987). Plaintiffs argue that because *Freeman* holds that death of the petitioning spouse cannot form the basis for the denial of an I–130 petition, *Matter of Estime* requires that the death of a spouse cannot form the basis of a revocation of the approval of an I–130 petition. Pls' 9th Cir. Opp'n at 13.

Furthermore, plaintiffs cite *Pierno v. INS*, 397 F.2d 949, 950 (2d Cir.1968), in which the INS had automatically denied plaintiffs' application for adjustment of status due to her spouse's death. The Second Circuit stated that 8 U.S.C. § 1155 "should not be interpreted to authorize the Attorney General's wooden application of rules for automatic revocation." *Id.* The Court stated

> We can hardly imagine that Congress would have intended Mrs. Pierno to be deported as a result of her husband's death had he been, for instance, a member of the armed forces killed in action while the status adjustment proceedings were pending. Yet, such a result would follow from the Service's decision. The purpose of placing such discretion regarding immigration in the hands of the

Attorney General, rather than having that field governed by a detailed statute, is to give some flexibility in treating a myriad of possible situations. Regulations issued by the Attorney General should not be so applied as to frustrate that Congressional intent.

*Id.* at 951. *See also Leano v. Immigration & Naturalization Service*, 460 F.2d 1260, 1260–61 (9th Cir.1972) (INS's automatic order of deportation after plaintiff's petitioning father died was improper, finding that "strict position taken by the Service was not required").

Defendants, however, argue that *Pierno*, 397 F.2d 949 (2d Cir.1968), is not controlling, because subsequent case law demonstrates that agencies have wide discretion to promulgate generalized rules, such as the automatic revocation regulation at issue here, as long as Congress has not clearly expressed a contrary intent. Defs' 9th Cir. Mot. at 28, citing *American Hospital Ass'n v. NLRB*, 499 U.S. 606, 612, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991) ("even if a statutory scheme requires individualized determinations, the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority"); *see also Heckler v. Campbell*, 461 U.S. 458, 467, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (agency not required to "continually ... relitigate issues that may be established fairly and efficiently in a single rulemaking proceeding."). Defendants argue that "the purpose of family-based immigration policy—to promote family unity for the U.S. citizen—establishes that the death of the citizen spouse constitutes 'good and sufficient cause' for terminating the petition approval." Defs' 9th Cir. Reply at 15.

Defendants further argue that it is clear that Congress has not evinced a contrary intent that would bar the automatic revo-

cation regulation. In fact, defendants argue that revocation of visa petitions has been automatic at the death of the visa petitioner since 1952. Defs' 9th Cir. Mot. at 30. Furthermore, defendants argue that, in enacting the substitute sponsor provision through Public Law 107–150 in 2001, Congress expressly took note of the regulation that revokes approval of a Form I–130 on the petitioners' death, and did not alter it. Defs' 9th Cir. Mot. at 30, citing H. Rep. 107–127 at 6 (2001) ("The Committee does not intend this bill to restrict the Attorney General's ability to revoke any petition, whether as a result of the death of the petitioner or otherwise, for good sufficient cause . . .").

Defendants also argue that the automatic revocation of an I–130 at the citizen's spouse's death is valid, because it gives effect to the principle that "an alien cannot immigrate if he or she is not actually eligible when he or she seeks admission with an immigrant visa . . ." Defs' 9th Cir. Mot. at 29, citing 8 U.S.C. 1154(e) ("Nothing in this section shall be construed to entitle an immigrant, in behalf of whom a petition under this section is approved . . . as an immediate relative under section 201(b) [8 USCS § 1151(b)] if upon his arrival at a port of entry in the United States he is found not to be entitled to such classification."). Specifically, defendants argue that, when the petitioning spouse dies, the affidavit of support filed by the alien's petitioning spouse—a prerequisite to admissibility—is no longer valid, and, therefore, the alien is not admissible. Hence, defendants argue, they are entitled to automatically revoke, and to require an alien to request reinstatement and to file a substitute affidavit of support from a new sponsor.

In general, an affidavit of support (the I–864 form) is a prerequisite to an alien's admissibility. Under 8 U.S.C. § 1182(a)(4)(C), family-sponsored immi-grants (like plaintiffs in this action) are inadmissible unless "the person petitioning for the alien's admission (and any additional sponsor required under section 213A(g)) or any alternative sponsor permitted under paragraph 5(B) of such section) has executed an affidavit of support described in section 213A [8 U.S.C. 1183(a)] with respect to such alien." Under 8 U.S.C. § 1183a(a)(1),

No affidavit of support may be accepted by the Attorney General or by any consular officer to establish that an alien is not excludable as a public charge under section 212(a)(4) [8 USCS § 1182(a)(4)] unless such affidavit is executed by a sponsor of the alien as a contract— . . . (B) that is legally enforceable against the sponsor.

However, 8 U.S.C. § 1183a(f)(5)(B) provides that a person who is not petitioning on behalf of an alien may nevertheless file an affidavit of support, if such person is a family member of the alien and

(i) the individual petitioning under section 204 [8 USCS § 1154] for the classification of such alien died after the approval of such petition; and

(ii) the Attorney General has determined for humanitarian reasons that revocation of such petition under section 205 [8 USCS § 1155] would be inappropriate.

Plaintiffs argue that defendants' requirement that plaintiffs submit a substitute affidavit of support in order to reinstate their approved I–130 form is improper, because, like the I–485, an affidavit of support is related to the section of the statute governing admissibility (8 U.S.C. § 1182, and specifically 8 U.S.C. § 1182(a)(4) ("Public Charge")), and admissibility is not relevant to an I–130 petition proceeding. First Opp'n at 2, citing Matter of O, 8 I. & N. Dec. 295 (BIA 1959). Plaintiffs again argue that defendants may not utilize admissi-

bility concerns to withhold approval or revoke approval of an immediate relative petition. Pls' Mot. at 2, 14.

Defendants, however, argue that the imposition of a substitute affidavit of support requirement does not read admissibility criteria into the petition procedure. Instead, the requirement merely addresses "how, once the Form I–130 is approved under *Freeman,* the alien can 'overcome inadmissibility on public charge grounds.'" Defs' 9th Cir. Mot. at 23. Defendants argue that an enforceable affidavit of support (I–864) is a requirement of admissibility. *See* 8 U.S.C. § 1183a(a)(1)(B) (affidavit of support must be "legally enforceable against the sponsor by the sponsored alien"). Defendants further note that an alien's eligibility for adjustment of status is decided based on the facts as they exist on the date of decision, and argue that "[u]nder *Freeman,* an alien may still qualify as the spouse of a citizen, even though the qualifying marriage has terminated by death. All other admissibility factors, however, must still be satisfied at the time of the decision." Defs' 9th Cir. Mot. at 23, citing *Matter of Alarcon,* 20 I. & N. Dec. 557, 562 (BIA 1992) ("An application for admission to the United States is a continuing application, and admissibility is determined on the basis of the facts and the law at the time the application is finally

considered."). Therefore, defendants argue, an affidavit of support must be legally enforceable at the time of adjudication of admissibility. Because in plaintiffs' cases admissibility is to be determined after the death of the U.S. citizen spouse who filed the affidavit of support, a substitute affidavit is required, or else the alien is inadmissible.

Defendants acknowledge that, by employing the "revoke and reinstate" mechanism, defendants revoke the I–130 form—a form that does not deal with admissibility—but argues that it does so because 8 U.S.C. § 1183a(f)(5)(B) is the only statutory mechanism available which allows for the submission of a substitute I–864 after a petitioning U.S. citizen has died. Defs' 9th Cir. Mot. at 24. Defendants further argue that the mechanism used is largely irrelevant, because "[w]ithout an enforceable Form I–864 from a substitute sponsor, the alien is inadmissible under 8 U.S.C. § 1182(a)(4)(C) and therefore ineligible for adjustment of status as a matter of law." Defs' 9th Cir. Mot. at 24. In other words, the question of whether automatic revocation is valid is "largely academic" because "whether the approval of Form I–130 is revoked or not, there must still be a Form I–864 from a qualified substitute sponsor ...."[22] Defs' 9th Cir. Mot. at 27.

---

22. Plaintiffs, however, dispute not only defendants' use of the revoke and reinstate mechanism, but also defendants' argument that a "valid affidavit" is required, arguing that, in fact, all that is required is that the alien's spouse "executed" the requisite I–864 form prior to his or her death. Pls' 9th Cir. Opp'n at 6, citing 8 U.S.C. § 1183a(a)(1) ("No affidavit of support may be accepted ... unless such affidavit is executed by a sponsor ... as a contract—(B) that is legally enforceable against the sponsor"). Because the petitioning citizen spouses in plaintiff's cases all executed affidavits of support prior to death, plaintiffs argue, substitute affidavits are not

required. First Opp'n at 6. Plaintiffs argue that

[t]he fact that the duly executed affidavit of support becomes unenforceable does not make the alien inadmissible under 8 U.S.C. § 1182(a)(4) [which governs public charge admissibility grounds], because the petitioner and alien spouse have done all that is required under the statute. Enforceability is not required for the sponsored immigrant to be admissible—only execution of the affidavit by the petitioning sponsor.

Pls' Mot. at 16. Defendants, however, argue that the language of 8 U.S.C. § 1183a(a)(1)— "no affidavit of support may be accepted" unless it is "legally enforceable"—means that

The Court, however, finds defendants' arguments unpersuasive. By automatically revoking the I–130's of plaintiffs who, under the holdings in *Freeman*, 444 F.3d 1031, qualify as immediate relatives spouses, and by requiring them to request humanitarian reinstatement, defendants are improperly importing discretionary considerations into the non-discretionary determination of whether an alien is an "immediate relative." *See* 8 U.S.C. 1154(b) ("the Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative ... approve the petition ...") (emphasis added). Furthermore, it is untenable under the holding of *Freeman* that the death of a U.S. citizen spouse could constitute "good and sufficient cause" for automatic revocation pursuant 8 U.S.C. § 1155.

Furthermore, in requiring plaintiffs to submit a substitute affidavit of support—a requirement related to the alien's admissibility—as a prerequisite to reinstating the alien's I–130 petition for immediate relative status, defendants are impermissibly basing a non-discretionary decision regarding immediate relative status on criteria governing admissibility.[23] *See Matter of O*, 8 I. & N. Dec. 295 (BIA 1959) ("[t]he visa petition procedure is concerned merely with the question of status. It does not concern itself with substantive questions of inadmissibility ..."). Therefore, the Court finds 8 C.F.R.

---

the affidavit must establish that the alien is not "excludable as a public charge."

> The mere filing of a Form I–864 by a sponsor in support of an alien's Form I–485 does not mean that 'acceptance' in the relevant sense has occurred ... 'Acceptance' in other words, must mean an act of adjudication—a decision that the Form I–864 is sufficient to establish that the requirements of section 213A are met.

Pls' Reply at 13.

Furthermore, plaintiffs argue that even if an enforceable affidavit is required for admission, defendants' requirement of a substitute affidavit is improper, because the affidavit of support executed by the U.S. citizen spouse prior to his or her death is, in fact, enforceable. Once the affidavit was executed, plaintiffs argue, it is a legally enforceable contract against the sponsor, and the death of the sponsor who executed it does not foreclose its enforceability. First Opp'n at 7. Plaintiffs acknowledge that 8 C.F.R. § 213a.2(e)(2)(ii) explicitly states that "enforcement ends in death." Pls' Mot. at 17; *see* 8 C.F.R. § 213a.2(e)(2)(ii) ("The support obligation under Form I–864 also terminates if the sponsor, substitute sponsor or joint sponsor dies."). However, plaintiff argues that this regulation is contrary to congressional intent. Specifically, plaintiffs note that Congress explicitly provided that an affidavit of support may become unenforceable when the alien works 40 qualifying quarters of coverage; plaintiffs argue that the fact that Congress specifically stated one way that an affidavit of support could become enforceable, but did not state that an affidavit of support becomes unenforceable upon death, indicates that Congress clearly did not mean for the death of the spouse to render the affidavit unenforceable. Pls' Ninth Cir. Opp'n at 7–8; *see* 8 U.S.C. 1183a(a)(3)(A). In other words, plaintiffs argue that if Congress intended for an affidavit to be unenforceable at death, it would have so provided in the statute.

Defendants dispute that a petition is enforceable against a deceased petitioner, arguing that because the statute clearly requires that a sponsor be an "individual," the deceased's estate cannot qualify. *See* 8 U.S.C. § 1183a(f)(1) ("the term "sponsor" in relation to a sponsored alien means an *individual* who executes an affidavit of support ...") (emphasis added).

**23.** The Court finds that it cannot determine, based on the arguments set forth by the parties as summarized in footnote 22, that plaintiffs have established that defendants may not require a substitute affidavit of support as a grounds for admissibility. The Court therefore declines to so find, and limits its holding herein to a finding that defendants may not require such an affidavit of support as a prerequisite to reinstatement of the alien's I–130 petition.

§ 205.1(a)(3)(i)(C)(2) invalid under the holdings in *Freeman* and *Lockhart.*

## C. Arguments Regarding Specific Individual Plaintiffs

### 1. Plaintiff Lockett

■ Defendants argue that plaintiff Lockett has returned to the United Kingdom, and that, therefore, his challenge to the denial of his I–485 is moot. Defs' 9th Cir. Mot. at 33. Under 8 C.F.R. § 245.2(a)(4)(B), "[t]he travel outside of the United States by an applicant for adjustment who is not under exclusion, deportation, or removal proceedings shall not be deemed an abandonment of the application *if he or she was previously granted advance parole* by the Service for such absence." (emphasis added). Plaintiffs argue that plaintiff Lockett in fact obtained an advance parole travel document prior to his departure, but due to personal circumstances, did not return before the expiration date of the document. Pls' 9th Cir. Opp'n at 16. Plaintiffs further argue that defendants currently refuse to issue a renewal document, and that this denial derives from defendants' unlawful interpretation of the term "spouse." Pls' 9th Cir. Opp'n at 16. Defendants, however, correctly note that the decision of whether to grant advance parole is purely a matter of agency discretion not subject to judicial review. Defs' Reply at 21; *see Hassan v. Chertoff*, 543 F.3d 564, 566 (9th Cir.2008) (affirming the district court's holding that it lacked jurisdiction over plaintiff's claim regarding revocation of his advance parole "because the revocation of advance parole, like the grant of advance parole, is discretionary.").

### 2. Plaintiff De Mailly

Defendants argue that plaintiff De Mailly has abandoned her adjustment of status application, because she has left the United States and now resides in Belgium. Defs' Opp'n at 24, citing Decl. of Suzanne DeMailly ¶ 2 ("I currently live in Bruxelles, Belgium. I entered the United States lawfully, and lived in Los Angeles, California, but was forced to return to Belgium following the denial of my application for permanent resident status.").

Defendants argue that "as an alien who is not in the United States after having been admitted to the United States, and who does not reside in the United States, Plaintiff De Mailly has no right to judicial review of an administrative decision that she is not eligible to immigrate." Defs' Opp'n at 24. Defendants cite *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) in which the Court held that "an unadmitted and nonresident alien ... had no constitutional right of entry to this country as a nonimmigrant or otherwise" and *Braude v. Wirtz*, 350 F.2d 702, 706 (9th Cir.1965) (finding no right of judicial review where appellant aliens, who challenged administrative determinations affecting appellants' eligibility to obtain immigrant visas to enter United States, had not sought admission).

### 3. Conclusion

The Court cannot determine, based on the limited evidence before it, the exact status of the I–130 petitions and adjustment of status and visa applications of plaintiffs Lockett and De Mailly. However, to the extent that the Court's holding herein regarding the application of *Freeman* and *Lockhart* affects the disposition of any of these plaintiffs' petitions and applications, defendants are hereby ordered to apply the holding herein and to adjudicate them accordingly. Furthermore, defendants are cautioned that they may not use factors arising from their improper denial of plaintiffs' applications to again deny the petition and application upon reopening them.

## V. CONCLUSION

The Court herein GRANTS in part and DENIES in part defendants' motion for summary judgment as to all plaintiffs outside of the Ninth Circuit. Specifically, the Court DENIES defendants' motion with regard to the Sixth Circuit plaintiffs. The Court GRANTS defendants' motion with regard to the Third Circuit plaintiffs. The Court DENIES plaintiffs' and defendants' motions with regard to plaintiffs outside the Ninth, Sixth, and Third Circuits.[24] The Court DENIES defendants' motion for partial summary judgment as to plaintiffs in the Ninth Circuit. The Court GRANTS in part and DENIES in part plaintiffs' renewed motion for summary judgment.

Specifically, the Court finds that plaintiffs who reside in the Ninth and Sixth Circuits are entitled to "immediate relative" classification based on their status as surviving spouses of deceased United States citizens.

Furthermore, the Court finds defendants' application of *Freeman* to Ninth Circuit plaintiffs, in the manner set forth in the Aytes Memorandum, to be invalid. First, the Court holds that the *Freeman* holding applies equally to those cases in which an I–485 application was not filed prior to the U.S. citizen spouse's death. Furthermore, the Court finds 8 C.F.R. § 205.1(a)(3)(i)(C)(2), which revokes an alien's I–130 form on the basis of the death of the alien's U.S. citizen spouse and requires the alien to petition for humanitarian reinstatement and to file a substitute affidavit of support as a prerequisite to reinstatement of the I–130, to be invalid as a matter of law as applied to plaintiffs in the Ninth and Sixth Circuits.

Defendants are hereby ordered to reopen the immediate relative petitions and applications for adjustment of status and immigrant visas of plaintiffs in the Sixth and Ninth Circuits, and to adjudicate them in a manner consistent with the holding of the Court.[25]

IT IS SO ORDERED.

---

**24.** At the hearing, the parties raised the issue of the proper disposition of the claims of plaintiffs outside the Third, Sixth, and Ninth Circuits, and in particular whether such plaintiffs' claims should be dismissed or transferred. This issue has not been briefed by the parties, and the Court has insufficient information before it to decide this question at this time.

**25.** At the hearing, defendants requested clarification of the scope of the Court's holding. The instant holding applies to named plaintiffs in the Ninth and Sixth Circuits, as well as unnamed members of the Ninth Circuit class.